## Commonwealth *vs.* Hernan Cruz.

Suffolk. January 8, 1997. - February 6, 1997.

Present: Wilkins, C.J., O'Connor, Greaney, Fried, & Marshall, JJ.

*Homicide. Stalking. Practice, Criminal,* Trial of indictments together, Argument by prosecutor, Instructions to jury, Capital case. *Evidence,* State of mind. *Mental Impairment.*

Evidence at the trial of indictments for murder and stalking (G. L. c. 265, § 43[a]) warranted the jury's finding the defendant guilty of murder in the first degree by reason of deliberate premeditation [209] and guilty of stalking the victim [209-210].

A charge of stalking was properly joined for trial with indictments for murder of the same victim and armed assault of another, where the evidence supporting the stalking charge was relevant to the issues of malice and intent. [210-211]

At a murder trial, testimony of police officers concerning the victim's reports of domestic violence incidents and other testimony concerning the victim's accounts to others of the defendant's violence and threats and the victim's fear was properly admissible as relating to the victim's state of mind, where there was evidence that the defendant knew of that state of mind; further, error, if any, in the admission of such evidence could not have had an effect on the jury's verdicts, where there was ample other properly admitted evidence demonstrating the victim's and defendant's respective states of mind. [211-212]

At a murder trial there was no reversible error in the prosecutor's closing argument. [212-213]

At a murder trial there was no substantial likelihood of a miscarriage of justice arising from the judge's instructions on the issue of the defendant's mental impairment and the element of specific intent necessary to establish the first two prongs of malice. [213]

Indictments found and returned in the Superior Court Department on August 20, 1993.

The cases were tried before *Thomas E. Connolly,* J.

*Stephen Neyman* for the defendant.

*Katherine E. McMahon,* Assistant District Attorney (*James W. Coffey,* Assistant District Attorney, with her) for the Commonwealth.

GREANEY, J. A jury in the Superior Court convicted the defendant, Hernan Cruz, of murder in the first degree of his estranged girl friend, Francisca Guthrie (victim), on the basis of both deliberate premeditation and extreme atrocity or cruelty. The jury also convicted the defendant of stalking the victim, in violation of G. L. c. 265, § 43 (a), and of committing an armed assault with intent to murder on the victim's mother, in violation of G. L. c. 265, § 18 (b). Represented by new counsel on appeal, the defendant argues that the evidence was insufficient to warrant his convictions of murder in the first degree on the basis of extreme atrocity or cruelty and of stalking. The defendant also argues that there was error in the joinder of the stalking indictment at the trial of the other indictments, in the admission of certain evidence, in comments made by the prosecutor in his closing argument, and in the judge's instructions to the jury. We affirm the convictions. We also conclude that no basis exists to exercise our power under G. L. c. 278, § 33E, to reduce the conviction of murder or to order a new trial.

There is no need to recount the evidence in detail. The Commonwealth presented evidence that the defendant had been stalking, harassing, battering, and threatening the victim. During the early evening of August 4, 1993, the victim was in the parking lot of the Mystic Mall in Chelsea. She was pushing a carriage containing her two month old daughter (the child of the victim and the defendant), accompanied by her two sisters and her mother. The defendant approached the women in his automobile. After speaking briefly with the victim, the defendant aimed a handgun at her, fired, and missed. The defendant then got out of his automobile and began chasing the victim, continuing to shoot at her. The defendant eventually caught up with the victim. The victim held her hands out and pleaded, "Don't. Please stop." The defendant slowly raised the handgun, aimed it at the victim's head, and shot her. The defendant then fired at the victim's mother and missed, and fled the scene in his automobile. Shortly thereafter, the defendant went to the home of a friend to whom he admitted shooting the victim and shooting at her mother. The friend convinced the defendant to surrender himself to the police. As the defendant was leaving his friend's house, the police arrived and placed the defendant under arrest.

1. The defendant argues that the submission of the first degree murder charge to the jury on a theory of extreme atrocity or cruelty created a substantial likelihood of a miscarriage of justice because a conviction on that theory cannot be upheld when the victim dies as a result of a single gunshot wound.[1] The Commonwealth maintains that the evidence was sufficient to warrant a finding by the jury that the murder was committed with extreme atrocity or cruelty because several additional factors identified in *Commonwealth* v. *Cunneen*, 389 Mass. 216, 227 (1983), were shown to be present.[2] We need not decide the issue because the Commonwealth's evidence was sufficient to warrant the jury's conviction of the defendant of murder in the first degree by reason of deliberate premeditation.

There was evidence that, prior to the shooting, the defendant stated that he should kill the victim, and further evidence that, on the day of the shooting, the defendant was overheard saying that "if [the victim is] not going to be with me, then she's not going to be with nobody else." There was also evidence that the defendant followed the victim to the mall parking lot, carrying a loaded handgun (with thirty-eight additional bullets in his automobile), pursued the victim through the parking lot, fired at her several times, and then caught up with her and shot her through the head at virtually point blank range. This evidence fully warranted the jury's separate finding of murder in the first degree by reason of deliberate premeditation and makes it unnecessary to consider the validity of the jury's finding of murder in the first degree by reason of extreme atrocity or cruelty. See *Commonwealth* v. *Chipman*, 418 Mass. 262, 270 n.5 (1994), and cases cited.

The defendant also argues that it was error to deny his motion for a required finding of not guilty on the stalking charge. Under G. L. c. 265, § 43 (*a*), "[a] person shall be guilty of the crime of stalking if that person (1) wilfully and maliciously engages in a knowing pattern of conduct or series of acts over a period of time directed at a specific person which seriously

---

[1]The defendant's trial counsel made no objection to the jury's consideration of the theory of extreme atrocity or cruelty as a basis for finding murder in the first degree.

[2] The Commonwealth points to the evidence that the defendant shot repeatedly at the victim who begged for her life.

alarms or annoys that person and would cause a reasonable person to suffer substantial emotional distress and (2) also makes a threat with the intent to place that person in imminent fear of death or bodily injury" (footnote omitted). *Commonwealth* v. *Kwiatkowski,* 418 Mass. 543, 547-548 (1994). The threat element is similar to the common law definition of assault. *Commonwealth* v. *Matsos,* 421 Mass. 391, 394 (1995).

There was evidence that the defendant had choked the victim, had slapped her in the face, had demanded, while armed with a handgun, to see her, had come by the victim's mother's apartment (where the victim was staying) on a daily basis, beeping his automobile horn and ringing the doorbell, and, a few hours prior to the shooting, had angrily confronted the victim. Additionally, the Commonwealth presented evidence that the defendant pursued the victim through the mall parking lot before killing her. The evidence, with the inferences that could be drawn therefrom, was sufficient to warrant the jury in finding beyond a reasonable doubt that the defendant had engaged in a pattern of aggression and violence toward the victim, a pattern that created a reasonable apprehension on her part that she was in danger of imminent physical harm. See *Commonwealth* v. *Matsos, supra* at 395. See also *Commonwealth* v. *Robicheau,* 421 Mass. 176, 181 (1995) (violation of G. L. c. 209A can be based on fear of imminent physical harm); *Commonwealth* v. *Gordon,* 407 Mass. 340, 349-350 (1990) (common law definition of assault can be used to find violation of G. L. c. 209A). The motion for a required finding of not guilty was correctly denied on the stalking charge.

2. There is no merit to the defendant's argument that the stalking charge should not have been joined for trial with the murder charge and the armed assault charge. The defendant's trial counsel did not file a motion to sever the stalking charge, perhaps realizing that the charge was a logical component of the pattern of hostile conduct directed by the defendant at the victim, culminating ultimately, in her murder and the armed assault on her mother. The evidence concerning stalking would have been admissible at the trial of the murder and armed assault charges even if the stalking charge had been tried separately. The evidence was directly relevant to the questions of malice and intent. See *Commonwealth* v. *Jordan*

*(No. 1)*, 397 Mass. 489, 491-492 (1986). There was no error in the joinder.

3. The Commonwealth presented testimony from two police officers who had responded to separate complaints of domestic violence made by the victim. The police officers indicated that the victim appeared upset and nervous on both occasions, and that she indicated that the defendant had broken a door lock during one incident. On one occasion, the victim told the investigating police officer that she would apply for a protective order against the defendant, and, on the other occasion, she indicated to the investigating police officer that she would move away from the defendant. The defendant was not present when the police responded to each complaint. The Commonwealth also presented testimony from several witnesses who testified that in their conversations with the victim, she told them about threats and abuse by the defendant, his acts of physical violence, her fear of him, and her unsuccessful efforts to avoid having any contact with him.

The defendant's trial counsel filed a motion in limine to exclude this evidence. In support of the motion, trial counsel pointed out to the judge that the defense in the case would come from a "psychiatrist"[3] who would testify that the defendant, at the time of the shooting, did not possess the state of mind necessary to establish deliberate premeditation. Trial counsel advised the judge that there would be no issue at trial as to motive, and that "there's no controversy as to the fact that there was clear-cut hostility between the parties." Trial counsel asked the judge to exclude the evidence because its "prejudicial effect far outweighs [its] probative value." The judge denied the defendant's motion in limine, and the defendant's trial counsel preserved objections to the evidence as it came in at trial. The defendant's appellate counsel now argues that the testimony by the police officers as to the domestic violence incidents should have been excluded because any marginal relevance it had was outweighed by its prejudicial nature. Appellate counsel also argues that the other testimony concerning the victim's accounts to others, detailing violence and threats by the defendant and her fear of him, was inadmissible hearsay.

We need not examine the defendant's assertions in detail.

---

[3]The witness eventually called by the defendant to raise this issue was a forensic psychologist.

The criticized evidence primarily related to the victim's state of mind and would be admissible if there was evidence that the defendant knew of that state of mind. See *Commonwealth* v. *Olszewski*, 401 Mass. 749, 759 (1988), *S.C.*, 416 Mass. 749 (1993), cert. denied, 513 U.S. 835 (1994); *Commonwealth* v. *Borodine*, 371 Mass. 1, 7-9 (1976), cert. denied, 429 U.S. 1049 (1977). There was properly admitted evidence that the defendant knew that the victim had tried to separate herself from him, and that she had communicated to him her desire to be rid of him. Thus, her mental state was shown by the evidence and had relevance to the defendant's motive to kill her. See *Commonwealth* v. *Lowe*, 391 Mass. 97, 103-104, cert. denied, 469 U.S. 840 (1984). Moreover, there was ample other proper evidence, apart from any of the evidence now challenged, of threats, acts of physical abuse, discord, and harassing conduct between the defendant and the victim that demonstrated their respective states of mind. Assuming there was error in the admission of some of the evidence, it could not have had an effect on the jury's verdicts.

4. There was testimony from a forensic psychologist that, at the time of the shooting, the defendant did not have the state of mind necessary to prove deliberate premeditation because of a mental impairment. The psychologist also testified that "there's a serious question as to whether [the defendant] was able to form malice aforethought." The psychologist's opinions given in his direct testimony were severely tested and undermined in cross-examination.

In closing argument, the prosecutor referred to the psychologist as a "charlatan." The defendant complains about this remark. He also complains that the prosecutor, in other respects, used his closing argument to inflame the jury's emotions, and that the prosecutor misstated the law on first degree murder by reason of extreme atrocity or cruelty.

The "charlatan" comment was improper, but any potential it may have had for damaging the defense was rendered harmless by a focused curative instruction given by the judge when the matter was called to his attention by the defendant's trial counsel. The other matters complained of were not objected to at trial. The prosecutor's effort to explicate the theory of extreme atrocity or cruelty for the jury was partly incorrect, but could have had no effect on the jury's conviction of the defendant of murder in the first degree on the theory of delib-

erate premeditation. The balance of the prosecutor's closing argument was not improper.

5. The defendant argues that the judge's instructions had the effect of preventing the jury from considering the evidence of his mental impairment on the element of deliberate premeditation, and he asserts that the reference to the third prong of malice during the discussion of murder in the first degree by reason of deliberate premeditation confused the jury. The defendant's trial counsel made no objection to the instructions now questioned, so the claims are considered under the standard of a substantial likelihood of a miscarriage of justice.

There is no such likelihood. The judge informed the jurors that they could consider the defendant's mental impairment, if they found any, on the question whether he had the specific intent necessary to establish the first two prongs of malice, and the judge stressed that such specific intent was "required here" before the jury could convict him of murder in the first degree. Deliberate premeditation was correctly defined as including a specific intent to kill. See *Commonwealth* v. *Waite*, 422 Mass. 792, 804 (1996). The third prong of malice was not involved in the deliberate premeditation theory, and the jury's verdict on that theory could only have rested on their rejection, under proper instructions, of the mental impairment evidence and their finding beyond a reasonable doubt that the defendant had harbored a specific intent to kill the victim.

6. After considering the whole case under G. L. c. 278, § 33E, we conclude that the conviction of murder in the first degree on the basis of deliberate premeditation is supported by the weight of the evidence and is consonant with justice.

*Judgments affirmed.*