COMMONWEALTH *vs.* TIMOTHY CULLEN.

No. 10-P-1399.

Norfolk. April 6, 2011. - May 31, 2011.

Present: McHugh, Brown, & Grainger, JJ.

*Practice, Criminal,* Motion for a required finding, Motion to suppress. *Stalking.*

At the trial of a criminal complaint charging stalking in violation of G. L.
    c. 265, § 43(*a*), the judge did not err in denying the defendant's motion
    for a required finding of not guilty, where the evidence easily satisfied the
    Commonwealth's burden to prove a pattern of conduct or series of acts
    and a targeted threat. [620-622]
A District Court judge did not err in denying a criminal defendant's pretrial
    motion to suppress evidence found by a police officer while conducting a
    patfrisk of the defendant following his arrest on a charge of stalking,
    where the officer was entitled to remove and unfold papers found on the
    defendant and was not required to ignore materials that obviously related
    to the charges underlying the stalking charge. [622]

COMPLAINT received and sworn to in the Dedham Division of
the District Court Department on October 5, 2009.

A pretrial motion to suppress evidence was heard by *Robert
P. Ziemian,* J., and the case was tried before him.

*Thomas E. Hagar* for the defendant.

*Varsha Kukafka,* Assistant District Attorney, for the
Commonwealth.

GRAINGER, J. The defendant was convicted of stalking his
former therapist, G. L. c. 265, § 43(*a*) (statute).[1] He appeals
from that judgment, claiming the judge erred in denying his
motions to suppress evidence and for a required finding of not
guilty. We affirm.

*Background.* We summarize the evidence in the light most
favorable to the Commonwealth. *Commonwealth* v. *Rivera,* 51

[1]The defendant also was charged with a second count of stalking and a
single count of distributing obscene matter. Both charges were dismissed upon
motions by the defendant.

Mass. App. Ct. 99, 100 (2001). Robert Nazarro, the director of treatment at the Counseling and Psychotherapy Center (CPC), treated the defendant from December, 2006, to August, 2008. Over an eight-month period in 2009, the corporate offices of CPC began to receive anonymous mailings. The mailings, which ultimately numbered twenty-five, contained a variety of materials: numerous highlighted newspaper articles, including several critical of sex offender treatment programs, internal CPC memoranda, a poster visually depicting numerous sexual positions, and a receipt for CPC services. The enclosed materials also contained handwritten notes generally critical of CPC,[2] as well as more particularized, threatening comments such as, "WE 'C' 'U' '2' ALKN" and "LOOK OVER YOUR SHOULDERS 4 LIFE." Numerous documents were signed with the acronym "ALKN" or "AMLKN." Officer Michael Tetrault of the Needham police department testified at trial that the acronym "AMLKN" stood for "All Mighty Latin King Nation" and referred to a primarily Hispanic gang active in Fall River.

The executive director of CPC, Dennis McNamara, routinely opened all mail sent to the CPC corporate offices. Though initially unable to discern the origin or the targeted individual recipient of the mailings, McNamara uncovered the defendant's identity after investigating the CPC receipt received on September 26, 2009. On the evening of October 1, 2009, CPC informed Nazarro of the correspondence. Nazarro was immediately concerned and contacted the police. Upon reviewing the mailings the following morning, Nazarro was "[s]hocked, scared, [and] panicked" at their contents, which included several references to his home address and license plate number — neither of which had been made available to his clients. Nazarro testified that these personal details, coupled with the threatening comments in several of the mailings, left him "paranoid" and "fearful."[3]

In response to Nazarro's concerns, on October 5, 2009,

---

[2]The handwritten notes included phrases such as "CPC stalks its clients," "CPC employs predators, stalkers," "program promotes recidivism," "CPC stalks clients," "CPC stalkers," "extortion, racketeering," and "CPC sends innocent victims to jail."

[3]Nazarro was particularly troubled by the prolonged duration of the mailings. He felt "[p]anicked, threatened . . . to have a series [of mailings], to have a

Officer Timothy Dooher of the Needham police department took the defendant into custody. During the booking process, Officer Dooher conducted an inventory search to catalogue the defendant's possessions and ensure that he did not possess contraband. Among other things, the search revealed a highlighter, three highlighted copies of a Boston Herald article, and a list of names, including that of Dennis McNamara.

*Motion for required finding of not guilty.* We review the evidence in the light most favorable to the Commonwealth to determine whether a rational jury could have found the essential elements of the crime beyond a reasonable doubt. *Commonwealth* v. *Latimore*, 378 Mass. 671, 677 (1979). All that is required is that the evidence, and permissible inferences therefrom,[4] be "of sufficient force to bring minds of ordinary intelligence and sagacity to the persuasion of [guilt] beyond a reasonable doubt." *Id.* at 676, quoting from *Commonwealth* v. *Cooper*, 264 Mass. 368, 373 (1928).

To support a finding of stalking under G. L. c. 265, § 43(*a*), the Commonwealth must prove that a person "(1) wilfully and maliciously engage[d] in a knowing pattern of conduct or series of acts over a period of time directed at a specific person which seriously alarms or annoys that person and would cause a reasonable person to suffer substantial emotional distress and (2) also makes a threat with the intent to place that person in imminent fear of death or bodily injury." *Commonwealth* v. *Jenkins*, 47 Mass. App. Ct. 286, 289 (1999), quoting from *Commonwealth* v. *Kwiatkowski*, 418 Mass. 543, 547-548 (1994).[5] In addition, to establish the pattern or series required by the statute, the Commonwealth must prove the defendant committed three or more separate incidents of the proscribed behavior. See *Jenkins*, *supra* at 290-291.

---

time that elapsed, to know that [the defendant's actions had] gone on for months and to extents that if this is what [he] was seeing, what was [he] not seeing . . . ."

[4]The Commonwealth may rely on circumstantial evidence, and inferences drawn "need only be 'reasonable and possible,' not necessary." *Commonwealth* v. *Bacigalupo*, 455 Mass. 485, 489 (2009), quoting from *Commonwealth* v. *Longo*, 402 Mass. 482, 487 (1988).

[5]As noted in *Jenkins*, *supra* at 288-290, the Legislature amended the statute in 1996 by adopting the language used by the *Kwiatkowski* court to save the prior version of the statute from constitutional infirmity.

The defendant asserts that the evidence fails to establish a "pattern of conduct or series of acts" that could have affected Nazarro because he was exposed to the mailings in bulk on one sole occasion. He misapprehends the import of the statutory language; the statute requires a series of acts or a pattern of conduct leading to a specified result (alarm or annoyance and substantial emotional distress) — it does not require each act in the series or pattern to produce the result separately, or to do so on each occasion. The evidence, twenty-five separate mailings over a period of approximately eight months, easily satisfies the Commonwealth's burden to prove the requisite pattern or series.

We are similarly unpersuaded by the defendant's contention that the Commonwealth failed to present sufficient evidence of a targeted threat. We acknowledge that generalized complaints about the workings of a department or organization, however bizarre or even ominous in tone, would not satisfy the requirements of the statute. Here, however, the mailings were sufficiently focused on Nazarro, and sufficiently explicit in the threatening nature of their message, to satisfy the Commonwealth's burden. The jury could infer a threat intended to put Nazarro in imminent fear of death or bodily injury from the defendant's repeated invocation of the Latin King gang and his statement, "LOOK OVER YOUR SHOULDERS 4 LIFE." The overt nature of these threats, coupled with the inclusion of several pieces of Nazarro's personal information, were more than enough to place a reasonable person in imminent fear of death or bodily harm and induce him to suffer substantial emotional distress. We view the mailings in their entirety, noting that wording, which considered alone might be relatively innocuous, can generate alarm when received and interpreted in the context of accompanying explicit and targeted messages.[6]

[6]The statute explicitly distinguishes, in the enumeration of the elements that constitute stalking, between the number of communications and the number of overt threats: "[w]hoever (1) willfully and maliciously engages in a knowing *pattern of conduct* or *series of acts* over a period of time directed at a specific person which seriously alarms or annoys that person and would cause a reasonable person to suffer substantial emotional distress, and (2) makes *a threat* with the intent to place the person in imminent fear of death or bodily injury, shall be guilty of the crime of stalking . . .." (emphasis supplied). G. L. c. 265, § 43(*a*), as amended through St. 1996, c. 298, § 11.

In this respect, as with assault in general, the totality of the defendant's behavior must be considered. See *Commonwealth* v. *Gordon*, 407 Mass. 340, 349 (1990) (in prosecution for assault, court will look to the actions and words of the defendant, not standing alone or in a vacuum, but in light of attendant circumstances); *Commonwealth* v. *Matsos*, 421 Mass. 391, 394 (1995) (threat element required for stalking conviction closely approximates common-law definition of assault).

*Motion to suppress.* The police officer who assisted at the defendant's booking conducted a patfrisk pursuant to the police department's written policy. The officer was entitled to remove and unfold papers found on the defendant; he was not required to ignore materials that obviously related to the charges underlying the arrest. While the police may not "hunt for information by sifting and reading materials taken from an arrestee," they "are not required to blind themselves to information appearing on a paper or card that declares its nature to anyone at sight." *Commonwealth* v. *Sullo*, 26 Mass. App. Ct. 766, 770 (1989). "[I]t is not realistic to expect the officer to forget what he has seen; and no purpose is served by requiring him to do so." *Commonwealth* v. *Vuthy Seng*, 436 Mass. 537, 551 (2002) (noting legal distinction between merely observing bank's name and logo on a bank card during an inventory search, and recording account numbers for use in further investigation).

*Judgment affirmed.*