COMMONWEALTH vs. BIRENDAR GUPTA.

No. 10-P-921.

Middlesex. September 11, 2013. - January 15, 2014.

Present: KANTROWITZ, SIKORA, & HINES, JJ.

*Stalking. Practice, Criminal,* Instructions to jury, Lesser included offense, Duplicative convictions, Discovery, Assistance of counsel, Argument by prosecutor. *Telephone. Evidence,* Relevancy and materiality.

The text and purpose of the statute governing the crime of stalking in violation of a restraining order, G. L. c. 265, § 43(*a*), (*b*), defeated the interpretation proposed by a criminal defendant that the statute requires the accused stalker to have placed the targeted person in reasonable fear of imminent death or bodily injury, rather than imminent fear of death or bodily injury [685-688]; moreover, there was no merit to the defendant's claims that the judge should have instructed the jury that the crime contains the two lesser included offenses of stalking and violation of a restraining order, that his trial counsel had provided ineffective assistance, and that minor inaccuracies in the prosecutor's closing argument created a substantial risk of a miscarriage of justice [688-690]; further, the judge's denial of the defendant's motion for a new trial, without an evidentiary hearing, was free of any error of law or abuse of discretion [690].

INDICTMENT found and returned in the Superior Court Department on November 13, 2008.

The case was tried before *Maureen B. Hogan*, J., and a motion for a new trial, filed on March 1, 2011, was considered by her.

*Tatum A. Pritchard* for the defendant.

*Hallie White Speight*, Assistant District Attorney, for the Commonwealth.

SIKORA, J. A Superior Court jury convicted the defendant of stalking in violation of a restraining order, G. L. c. 265, § 43(*b*). As a central argument in this consolidated appeal, he contends that the judge's instruction to the jury misconstrued the statutory definition of stalking and that under a correct definition the evi-

dence did not establish his guilt beyond a reasonable doubt. He presents several subsidiary arguments. For the following reasons, we affirm the judgment and the order denying the defendant's motion for new trial.

*Background.* 1. *Factual.* Through the course of six days and the testimony of twelve witnesses (ten presented by the Commonwealth and two by the defendant), the jury received the following evidence.[1]

The defendant and the victim, whom we shall call Manorma M. (Manorma), married in India in 2000. At that time Manorma was a widow and the mother of four children from her prior marriage. Through the ensuing seven years of marriage, the defendant physically, verbally, and sexually abused Manorma. The abuse involved batteries, forced sexual relations, and threats to harm and to kill her. She became afraid of him. During this time span the defendant regularly traveled to other countries for business purposes. The couple came to Massachusetts in April, 2007. The defendant rented an apartment in Somerville and began work at a restaurant; Manorma started work at a nearby salon.

On May 21, 2007, Manorma obtained a restraining order pursuant to G. L. c. 209A, § 3, from the District Court. The court extended the order first to June 4, 2007, then to May 30, 2008, and again to May 29, 2009. In pertinent part and by the standard language, it commanded the defendant (1) "not to abuse the plaintiff by . . . threatening . . . to harm [her] physically or by placing [her] in fear of imminent serious physical harm," and (2) "not to contact the plaintiff . . . either in person, by telephone, in writing or otherwise, either directly or through someone else, and to stay at least 50 yards from [her] even if [she] seems to allow or request contact."

After residing with friends, Manorma moved to a shelter in September of 2007. The defendant appears to have returned to India as of that time.

From June, 2007, until December, 2007, the defendant made 102 telephone calls to Manorma. In the calls he frequently swore at her and threatened to kill or harm her children and grandchildren if she did not return to India. The defendant also

---

[1]The defendant did not testify.

left voice messages accusing her of involvement with other men and threatening to kill her children or her. From the originating telephone numbers, she believed the calls to be coming from India. They disturbed her. She sought and received hospital treatment for insomnia and depression. By early December, 2007, she had changed her telephone number and stopped the flow of calls.

On May 11, 2008, Manorma and a friend visited a retail clothing store in Cambridge. By coincidence the defendant and two male companions were in the store. The defendant approached her and said loudly in Hindi that she would have to accompany him in two or three days; that he wanted her telephone number and address; and that, if she refused, he would take her by force. She refused and began crying. The defendant's two companions escorted him from the store. A victim's advocate met with her and took her to the police.

At trial, witnesses for the defendant testified that Manorma had expressed a desire to stay in the United States but to be rid of the defendant, that the defendant's presence at the store was accidental, and that no confrontation had occurred. Through cross-examination, the defendant's counsel proposed that the victim had fabricated the threats in order to achieve a visa to remain in the United States.

2. *Procedural.* A grand jury returned seven indictments against the defendant. Three proceeded through trial to guilty verdicts: (1) stalking in violation of the restraining order on diverse dates from May 22, 2007, to October 1, 2008; (2) a violation of the restraining order on the occasion of the May 11, 2008, meeting in the store, G. L. c. 209A, § 7; and (3) a violation of the restraining order by reason of the telephone communications after May 22, 2007, G. L. c. 209A, § 7.

At the Commonwealth's request, the judge dismissed the indictments for violation of the restraining order as possibly duplicative of the related stalking conviction. The judge sentenced the defendant to a term of from three to four years in State prison. The defendant moved for a new trial and postconviction discovery. The judge denied the motions. The defendant has appealed from both the judgment and the denial of the motion for a new trial.

*Analysis.* 1. *Stalking in violation of a restraining order.* Our main issue originates from the language of G. L. c. 265, § 43(*a*), (*b*), as amended through St. 1997, c. 238, § 1:

> "(*a*) Whoever (1) willfully and maliciously engages in a knowing pattern of conduct or series of acts over a period of time directed at a specific person which seriously alarms or annoys that person and would cause a reasonable person to suffer substantial emotional distress, *and* (2) *makes a threat with the intent to place the person in imminent fear* of death or bodily injury, shall be guilty of the crime of stalking and shall be punished . . . . Such conduct, acts or threats . . . shall include, but not be limited to, conduct, acts or threats conducted by mail or by use of a telephonic or telecommunication device including, but not limited to, electronic mail, internet communications and facsimile communications. [Emphasis supplied.]

> "(*b*) Whoever commits the crime of stalking in violation of a . . . restraining . . . order . . . shall be punished . . . ."

The required "pattern" or "series" must consist of three or more incidents of harassment. See *Commonwealth* v. *Kwiatkowski*, 418 Mass. 543, 548 (1994); *Commonwealth* v. *Julien*, 59 Mass. App. Ct. 679, 684 (2003). From the face of the statute and the *Kwiatkowski* decision, the judge instructed the jury straightforwardly upon the elements of the offense.[2] With regard to the "threat" element, she twice repeated the words of the clause that the defendant must intend to place the targeted person "in imminent fear of death or bodily injury." Defense counsel did not

---

[2]The judge instructed as follows:

"In order to prove the defendant guilty . . . , the Commonwealth must prove [six] things beyond a reasonable doubt. . . . First, that over a period of time the defendant knowingly engaged in a pattern of conduct or series of acts involving at least three incidents directed at [Manorma]; second, that those acts were of a kind that would cause a reasonable person to suffer substantial emotional distress; third, that those acts did cause [Manorma] to become seriously alarmed or annoyed; fourth, that the defendant took those actions willfully and maliciously; fifth, that the defendant also made a threat with the intention of placing [Manorma] in imminent fear of death or bodily injury; and sixth, that the defendant committed these acts in violation of [a] restraining or no-contact order."

request any elaboration upon the statutory words and did not submit any objection to the instructions.

On appeal, the defendant contends that the correct formulation of the "threat" element is that the accused stalker must have placed the targeted person in reasonable fear of imminent death or bodily injury, i.e., that imminence properly refers not to fear but rather to physical harm. He relies particularly upon the dictum of *Commonwealth* v. *Matsos*, 421 Mass. 391, 394 (1995), that the "[threat] element closely approximates the common law definition of the crime of assault, and we may assume that the Legislature was aware of this when it enacted the statute." See *Commonwealth* v. *Julien*, 59 Mass. App. Ct. at 685 (repeating the dictum).

At common law, an assault may arise from either (1) an attempted battery or (2) the infliction of reasonable fear of an immediate battery. See *Commonwealth* v. *Henson*, 357 Mass. 686, 692-693 (1970); *Commonwealth* v. *Gordon*, 407 Mass. 340, 349 (1990); *Commonwealth* v. *Gorassi*, 432 Mass. 244, 247 (2000). The gravamen of the crime is the imminence of the physical harm. The defendant proposes that the threatening telephone calls from India could not convey the danger of immediate physical injury, and points out that the stalking verdict slip did not distinguish between those long distance calls and the clothing store encounter. He argues, therefore, that the jury may have convicted him wrongly for conduct (the long distance calls) short of the statutorily required threatening behavior.

Because the defendant did not preserve this issue at trial, we consider only whether it creates a substantial risk of a miscarriage of justice. That standard requires the presence of an error causing serious doubt about the correctness of the trial result. See *Commonwealth* v. *Azar*, 435 Mass. 675, 687 (2002); *Commonwealth* v. *Acevedo*, 446 Mass. 435, 450 (2006). Here, the alleged error is an issue of statutory construction, or "a pure question of law." *Commonwealth* v. *Cintolo*, 415 Mass. 358, 359 (1993).

For multiple reasons, the judge's instruction was sound. The text and the visible purpose of the statute defeat the interpretation proposed by the defendant. The Legislature placed the adjective "imminent" before the word "fear" and not before the words

"death or bodily injury." The additional terms of § 43(*a*)(1) concentrate upon the emotional welfare of the contemplated victim, specifically the consequences of "alarm[]," "annoy-[ance]," and "emotional distress." The terms of § 43(*a*)(2) specifically include within stalking activity "conduct, acts or threats conducted by mail or by use of a telephonic or telecommunication device." Those remote means of communication do not typically present the fear of immediate physical harm but do inflict emotional distress. The plain meaning of the language selected by the Legislature aims to protect victims of stalking from fear itself, and not merely ultimate physical harm.

Precedents confirm this literal analysis. Threatening letters may constitute stalking activity without the risk of immediate or imminent physical harm to the recipient. See *Commonwealth* v. *Hughes*, 59 Mass. App. Ct. 280, 281 (2003) (multiple telephone calls and letters forwarded in violation of a restraining order; telephone threat communicated by jailed defendant to an intermediary for transmittal to victim). See also *Commonwealth* v. *Matsos*, 421 Mass. at 395-396 (more than forty letters through a ten-month period indicating surveillance of the victim and reflecting anger, harassment, and attempts to interfere with the victim's employment); *Commonwealth* v. *Cullen*, 79 Mass. App. Ct. 618, 619-621 (2011) (twenty-five mailings through an eight-month period indicating surveillance of, and hostility toward, the targeted individual).

Finally, the dictum in *Matsos*, *supra* at 394, treating the threat element of stalking as an approximation of criminal assault constitutes, at most, an analogy and certainly not an equation. The essential reasoning and holding of that case were that threats of harassment and violence conveyed by letters would satisfy the definition of stalking. *Id.* at 395-396. The dictum stands for the proposition that acts rising to the level of common-law criminal assault are sufficient, but not necessary, to satisfy the threat element of the stalking statute.

Under the correct application of the statute, the jury could have found beyond a reasonable doubt, see *Commonwealth* v. *Latimore*, 378 Mass. 671, 676-678 (1979), a violation comprised of either (1) the numerous telephone calls launched by the defendant during the interval from June to December, 2007, *or* (2) those

calls in combination with the clothing store confrontation of May 11, 2008. The evidence satisfied the "pattern" clause and the "threat" clause of § 43(*a*), and the restraining order element of § 43(*b*).[3] Manorma's "imminent fear" from the telephone calls had a reasonable basis in the defendant's mobility, history of abusive conduct, motivation, and his knowledge of her whereabouts in the Somerville area.

2. *Additional contentions.* a. *Failure to instruct on lesser included offenses.* The defendant contends that the judge should have instructed the jury explicitly that the crime of stalking in violation of a restraining order contained the two lesser included offenses of (i) stalking and (ii) violation of a restraining order, see *Edge* v. *Commonwealth*, 451 Mass. 74, 76-77 (2008), so that the jury would appreciate more clearly the option of convicting exclusively under a lesser included charge, and so that the jury would avoid the danger of duplicative convictions in violation of the prohibition against double jeopardy. See *Commonwealth* v. *Roberts*, 407 Mass. 731, 737 (1990) (upon request, the judge must "instruct the jury on the possibility of conviction of the lesser [included charge]" if the evidence would permit such a finding).

In this instance, trial counsel did not request the instruction upon the lesser included charges or object to its absence at the conclusion of instructions. We therefore again review only for a substantial risk of a miscarriage of justice. The notion that the

---

[3]As noted earlier, the anti-abuse clause of the standard restraining order issued under G. L. c. 209A forbids a defendant to abuse the plaintiff by "placing the [p]laintiff in fear of imminent serious physical harm . . . ." That prohibition applied to the defendant by operation of G. L. c. 209A, § 3(*a*), and the restraining order. See also G. L. c. 209A, § 1(*b*), as amended by St. 1990, c. 403, § 2, defining "abuse" as, inter alia, "placing another in *fear of imminent* serious physical harm" (emphasis supplied). Chapter 209A places the word "imminent" before "serious physical harm," whereas, as we have noted, c. 265, § 43(*a*), places the word "imminent" before "fear" ("threat with the intent to place the person in *imminent fear* of death or bodily injury") (emphasis supplied). Thus, as we have discussed, the anti-stalking statute operated *additionally* to forbid serial behavior and the concomitant use of a threat with the intent to place a person in imminent fear, even of *eventual* physical harm. The defendant's position would erase the distinction between the c. 209A order language and the anti-stalking threat language. The more stringent terms of the anti-stalking statute aim at the distinctive misconduct and psychic injury of stalking.

jury might have convicted only upon a lesser included offense is entirely speculative. The instruction upon each charged offense was accurate. The indictments and verdict slips received by the jury specifically identified the respective conduct for each charge (telephone calls as one violation of the restraining order; clothing store confrontation as another; and the combined activities as the stalking conduct violative of the restraining order[4]). Most importantly, the judge and the Commonwealth were alert to the danger of redundant verdicts and, by agreement, dismissed both charges of restraining order violations as potentially duplicative of the stalking conviction. The dismissal of the lesser included indictments supplied the appropriate remedy. See *Commonwealth v. Jones*, 382 Mass. 387, 395 n.10 (1981); *Commonwealth v. Crocker*, 384 Mass. 353, 358 n.6 (1981).

b. *Ineffective assistance of counsel.* The defendant argues also that trial counsel performed ineffectively by failures (i) to pursue the alternate view of statutory imminence; (ii) to request an instruction on lesser included offenses; and (iii) to attempt discovery of the victim's mental health records.

No ineffective assistance arises in the absence of the deprivation of a substantial ground of defense, *Commonwealth v. Saferian*, 366 Mass. 89, 96-97 (1974), or from an attorney's omission of unmeritorious or improbable efforts. See *Commonwealth v. Conceicao*, 388 Mass. 255, 264 (1983); *Commonwealth v. Diaz*, 448 Mass. 286, 293-294 (2007). As examined already, the alternate view of imminence is an incorrect interpretation of the statute, and the dismissal of the lesser included indictments eliminated the risk of double jeopardy harm to the defendant. Criticism of the omission of discovery of the victim's mental health records is entirely conjectural. The exploration of those records, if permitted upon some unspecified showing, would have speculative relevance and might bring some harm to the defendant's position if the records indicated that Manorma's emotional injuries resulted from the defendant's conduct. The absence of the records furnishes no indication of the loss of an otherwise available substantial ground of defense.

---

[4]As we have explained above, either the telephone calls alone, or the telephone calls in combination with the clothing store encounter, would satisfy the elements of stalking in violation of a restraining order.

c. *Prosecutor's closing argument.* The prosecutor's references to the testimony of three secondary witnesses contained minor inaccuracies. Defense counsel objected to one of the statements of which the defendant now complains. The judge reminded the jury that closing argument was not evidence and that their memory of the evidence overrode any representations by either counsel. The discrepancies, either separately or in combination, did not approach the level of harmful error, let alone a substantial risk of a miscarriage of justice.[5]

d. *Denial of motion for a new trial, without an evidentiary hearing.* The defendant moved for a new trial upon grounds of ineffective assistance of counsel and newly discovered evidence: information that the victim had received psychological counseling; and two letters purportedly sent by Manorma to the defendant in posttrial confinement, both of an insulting and mocking nature, and one inviting him to call her at a specific telephone number.

The judge conducted a nonevidentiary hearing and denied the motion by a thorough memorandum of decision. She found an evidentiary hearing unnecessary. She rejected the ineffectiveness argument for the reasons already discussed; she found the letters "not creditworthy" and any information of psychological counseling deficient in probative value. Her conclusions that the motion failed to present substantial information in support of serious issues were free of any error of law or abuse of discretion. See *Commonwealth* v. *DeVincent,* 421 Mass. 64, 67 (1995); *Commonwealth* v. *Goodreau,* 442 Mass. 341, 348 (2004).

*Judgment affirmed.*

*Order denying motion for a new trial affirmed.*

---

[5]Meaningful error will turn on "(1) whether the defendant seasonably objected; (2) whether the error was limited to collateral issues or went to the heart of the case; (3) what specific or general instructions the judge gave the jury which may have mitigated the mistake; and (4) whether the error, in the circumstances, possibly made a difference in the jury's conclusions." *Commonwealth* v. *Kater,* 432 Mass. 404, 422-423 (2000), citing *Commonwealth* v. *Kozek,* 399 Mass. 514, 518 (1987). That calculation will typically rest on an assessment of the entire record. See *Commonwealth* v. *Kozek, supra* at 523.