## COMMONWEALTH *vs.* BRIGITTE R. MEIER.

No. 00-P-1163.

Suffolk. April 3, 2001. - October 18, 2002.

Present: BECK, RAPOZA, & BERRY, JJ.

*Threatening. Evidence,* Threat. *Practice, Criminal,* Required finding.

The evidence at a criminal trial was sufficient to find that the defendant's statements constituted threats to commit a crime in violation of G. L. c. 275, § 2, rather than expressions of desperation, where the Commonwealth demonstrated that the defendant was angry at the victim, had a history of threatening him directly, and had exhibited increasingly hostile behavior toward him over a period of five years, culminating in her statement to a third party that she intended to obtain a gun and shoot the victim [280-281]; moreover, the evidence was sufficient to demonstrate that the defendant intended her comments to reach the victim when she uttered the threat to the third party, and that she conveyed the threat in circumstances that would reasonably justify apprehension on the part of the victim, in light of the defendant's letters to the victim, as well as her prior call to him in which she suggested that she should buy a gun [281-282].

COMPLAINT received and sworn to in the Boston Municipal Court Department on June 24, 1999.

The case was heard by *Sally A. Kelly,* J.

*William A. Korman* for the defendant.

*Alex G. Philipson,* Assistant District Attorney, for the Commonwealth.

RAPOZA, J. The defendant, claiming the trial judge erroneously denied her motion for a required finding of not guilty, appeals from her conviction of threatening to commit a crime in violation of G. L. c. 275, § 2. We affirm.

*Background.* Brigitte Meier and Norman Erlich, an attorney, first met in 1994 when Erlich was representing the board of trustees of Foxcroft Manor Condominium, where Meier resided. Erlich filed a lawsuit on behalf of the board in the Middlesex

Superior Court, seeking to enjoin Meier from venturing onto the roof of her condominium building and from interfering with repair work being performed by a roofing company. A jury awarded nominal damages against Meier, and a permanent injunction issued, banning her from the roof.

Meier then embarked upon a series of telephone calls and written communications to Erlich.[1] Erlich testified that he first received a threatening telephone call from Meier shortly after the conclusion of the Superior Court civil trial. In that call, she told him that the judge and jury had erred. She then said, "Maybe it's time for me to get a gun, Mr. Erlich." Following this call, Erlich reported Meier's comment, which he considered a threat, to the police, but he did not request the issuance of a criminal complaint. Erlich then wrote to Meier, but only to ask that she cease all contact with him, a request she ignored.

As a result of the litigation between Meier and the Foxcroft Manor Condominium, Meier incurred legal bills with the law firm that had represented her. When she failed to pay the resulting debt, the firm retained an attorney, Richard Burpee, to facilitate its collection. Burpee ultimately filed a civil suit on behalf of the firm against Meier, which resulted in a judgment against her for approximately four thousand dollars. Meier wrote to Erlich on May 4, 1999, and asserted that he was "the motor behind" Burpee's subsequent effort to execute on the judgment, claiming that Erlich had "pushed Burpee to execute." In her letter, Meier referred to Erlich as "a back alley crook" and "immensely sick," accusing him of extortion, corruption, sadomasochism, and of making false accusations against her. She added that she had "no further obligation to respect the law."

On May 19, 1999, Burpee made two telephone calls to Meier

---

[1] Erlich testified that, at first, the communications dealt mainly with Meier's various efforts to seek relief from the judgment against her. However, the letters began to criticize Erlich personally and contained some bizarre statements regarding his supposed efforts to torture her, to destroy her "reproductive tract," and to interfere with her "physical integrity." Meier objected unsuccessfully at trial to these letters and now appeals their admission in evidence. Because we determine, *infra*, that the letters were highly probative of her intent to communicate her May 19, 1999, threat to Erlich through Richard Burpee, we conclude that they were properly admitted.

to discuss payment of the judgment. During the first conversation, she asked for additional time to pay the debt. Burpee testified that when he called Meier a second time to respond to her request, she told him that "[i]f Mr. Erlich continued to torture her . . . she would get a gun. She would shoot him, and then she would shoot herself." Burpee interpreted these words to be a threat against Erlich and, although they were not personally acquainted, he telephoned Erlich and told him of Meier's statements.

Following the call from Burpee, Erlich was fearful for his safety. He went to the police station and filed a report, and a complaint was issued in the Boston Municipal Court charging Meier with threatening to commit assault and battery, in violation of G. L. c. 275, § 2. At the bench trial, Meier testified that her statements to Burpee were not threats, but merely reflected her exasperation in dealing with the attorneys. She claimed that she was "blowing off steam" and that, rather than being a threat, her statements were "an expression of pain and despair."

*Motion for required finding of not guilty.* There was sufficient evidence adduced at trial that the defendant expressed an intent to shoot Erlich in circumstances that could reasonably have caused him to fear that she had the ability to carry out that threat. See G. L. c. 275, § 2; *Commonwealth* v. *Robicheau,* 421 Mass. 176, 183 (1995); *Commonwealth* v. *Ditsch,* 19 Mass. App. Ct. 1005, 1005 (1985); *Commonwealth* v. *Troy T.,* 54 Mass. App. Ct. 520, 524-528 (2002). Denial of the motion was proper.

Although the defendant argues that her statements were expressions of exasperation and despair rather than threats, the Commonwealth produced sufficient evidence to prove otherwise. "A threat is 'the expression of an intention to inflict evil, injury, or damage on another' . . . . In analyzing a putative threat, we eschew a technical parsing of the words used and instead consider the entire context in which a statement is made, including the defendant's actions and demeanor at the time, and prior communications between the defendant and the recipient." *Id.* at 528, quoting from *Commonwealth* v. *Ditsch, supra.* Standing alone, the words uttered by Meier were unambiguous threats to

shoot Erlich if he did not stop "torturing" her.[2] Moreover, it was reasonable to infer from the broader context of the statements that she intended them as threats. Meier had already exhibited anger toward Erlich in a series of letters, the last of which was dated two weeks prior to the threats. In those communications, she expressed her belief that Erlich was the "motor behind Burpee" and his collection efforts. Her varied characterizations of Erlich's actions all indicated her view that he was the aggressor, leaving her no choice other than to obtain a gun, as she had told Erlich in an earlier telephone conversation. Matters escalated further when Meier subsequently told Burpee that she would indeed procure a gun and that she intended to shoot Erlich and then herself.

In sum, the Commonwealth demonstrated that Meier was angry at Erlich, had a history of threatening him directly, and had exhibited increasingly hostile behavior toward him over a period of five years, culminating in her statement to Burpee that she intended to obtain a gun and shoot Erlich. Viewed in a light most favorable to the Commonwealth, the evidence was sufficient to satisfy a rational trier of fact that the defendant's words constituted a threat.

Meier argues, alternatively, that even if her statements constituted threats, her conviction must be reversed because the Commonwealth failed to prove that she communicated those threats directly to Erlich. Although our case law has "never expressly articulated communication as an element of the crime of threatening, it is implicit . . . that the subject threat be communicated in some manner by the defendant." *Commonwealth v. Troy T.*, 54 Mass. App. Ct. at 525. "[I]t . . . seems quite reasonable that a threat may be communicated by a third party to the defendant's intended victim" and that "[i]n such instances, . . . the Commonwealth must prove, among other things, that the defendant intended to communicate the threat to the third party who acts as intermediary." *Id.* at 526. In this

[2]Notwithstanding the defendant's argument to the contrary, the conditional nature of the threat does not make it any less of a threat. See *Commonwealth v. Elliffe*, 47 Mass. App. Ct. 580, 583 (1999). In these circumstances, and given the entire context of the remarks, a reasonable trier of fact could infer that violence would follow if Meier perceived that Erlich continued to "torture" her.

respect, Meier does not dispute that she communicated the threats at issue directly to Burpee who, in turn, repeated them to Erlich. Rather, she argues that there was no evidence of (1) her intent to have Burpee communicate the threats to Erlich, or of (2) her ability or intent to carry them out so as to justify apprehension on Erlich's part.

The Commonwealth must prove, beyond a reasonable doubt, that the defendant intended that her threats be communicated to Erlich, even though that intention need not be express. "Intent, of course, may be proved by circumstantial evidence." *Id.* at 526-527. Thus, when a defendant utters a threat to a third party who "would likely communicate it to [the ultimate target]," *id.* at 527, the defendant's act constitutes evidence of her intent to communicate the threat to the intended victim. As noted previously, Meier's May 4, 1999, letter to Erlich conveyed her anger with him over the prior litigation and also established that she considered Erlich and Burpee to be in league with each other. Consequently, the fact finder could reasonably infer that Meier intended her comments to reach Erlich, with Burpee serving as the intermediary.

Finally, the threats were conveyed in circumstances that would reasonably justify apprehension on the part of Erlich. This was especially so in light of Meier's letters to him, one of which stated that she had "no further obligation to respect the law," as well as her prior telephone call to him in which she suggested that she should buy a gun, a remark that alarmed Erlich enough to report it to the police. There was no error.

*Judgment affirmed.*