## COMMONWEALTH *vs.* KENNETH HUGHES.

No. 01-P-1769.

Suffolk. April 4, 2003. - September 15, 2003.

Present: PORADA, KASS, & GREENBERG, JJ.

*Stalking. Abuse Prevention. Evidence,* Threat.

The evidence at a criminal trial was sufficient for the jury to find that the defendant's statements to his brother were a threat against the victim with the intent to place her in imminent fear of death or bodily injury under G. L. c. 265, § 43(*a*), where it was demonstrated that the defendant intended his remarks to his brother, who played the role of intermediary between the defendant and the victim, to be passed on to the victim. [281-283]

INDICTMENT found and returned in the Superior Court Department on February 12, 1998.

The case was tried before *Margot Botsford,* J.

*Paul C. Brennan* for the defendant.

*Seema Malik Brodie*, Assistant District Attorney, for the Commonwealth.

KASS, J. In his appeal from a conviction of stalking Loray Brooks, while subject to a domestic abuse restraining order, the defendant Kenneth Hughes focuses on the threat component in G. L. c. 265, § 43(*a*).[1] He argues that the Commonwealth failed to adduce evidence on which a jury could reasonably find that he had made a threat against Brooks with the intent to place her in imminent fear of death or bodily injury. We affirm.

1. *Facts.* Hughes and Brooks had lived together for twenty years. Beginning in 1995, the relationship became fractious and a series of events occurred that culminated in the issuance on May 13, 1997, of a domestic abuse restraining order under

---

[1]Hughes was also convicted of assault and battery (G. L. c. 265, § 13A). He does not appeal from that conviction.

G. L. c. 209A. Under the order, Hughes was not to have contact with Brooks except to visit with their three children and then only through the intercession and supervision of Hughes's brother, Derrick. During the next three months, Hughes persistently violated the restraining order. He called Brooks at home repeatedly. He sent her letters. The message, whether by phone or mail, was generally the same: "Why are you doing this to me. I have to be with you." Hughes was poignantly attached to Brooks. She had determined she could no longer live with him. They had never married.

In August, 1997, Hughes was incarcerated for violation of the c. 209A order but managed to bombard Brooks with telephone calls from his place of confinement. When released on December 19, 1997, Hughes turned up in the parking lot of a small shopping center that Brooks was in the habit of using. She had arrived there with their son, then four or five years old. Hughes approached them. He picked up the boy, climbed into the passenger seat of Brooks's car and said, "Let's go home now, I'm tired." Brooks sought refuge in a Bradlee's store and called for police. The episode landed Hughes back in jail, and a telephone call from there to his brother Derrick contained the material that is the major basis of the threat component of the indictment against Hughes. During the course of that call, Hughes said to his brother Derrick, the intermediary between Hughes and Brooks, "something along the lines of if she was afraid of him then, she should be more afraid of him now." Derrick, in the course of the same conversation, said: "[I]f there was anything that was going to harm anyone in that household, he would have to come through me." To that Hughes responded that he "would go around" Derrick. There was no evidence that anyone communicated that conversation to Brooks.

2. *Discussion.* The defendant's argument on appeal is that unless there was evidence that those remarks of the defendant that were susceptible of being construed as threats to Brooks had actually been communicated to her, the charge of stalking while subject to a c. 209A order (see G. L. c. 265, § 43[(*b*)]) could not be put to the jury; i.e., he was entitled to a required finding of not guilty. Central to that defense is that a threat by speech — "conducted by mail or by use of a telephone," G. L. c. 265,

§ 43[*a*], as inserted by St. 1997, c. 238, § 1 — is like the threatened battery form of criminal assault, as to which the target must be aware of the threat. See *Commonwealth* v. *Chambers*, 57 Mass. App. Ct. 47, 51 (2003).

The case law is otherwise. In *Commonwealth* v. *Troy T.*, 54 Mass. App. Ct. 520, 526-527 (2002), we wrote that:

> "[A] threat may be communicated by a third party to the defendant's intended victim. In such instances, . . . the Commonwealth must prove, among other things, that the defendant intended to communicate the threat to the third party who acts as intermediary. Intent, of course, may be proved by circumstantial evidence."

More recently, those principles were applied in *Commonwealth* v. *Meier*, 56 Mass. App. Ct. 278 (2002). The defendant in that case had said to a lawyer about his client, that if he (the client) "continued to torture her" she would get a gun, shoot him, and then herself. *Id.* at 280. We decided that threatening remarks made to a lawyer and directed at his client were likely to be communicated to the ultimate target and that this would constitute evidence of the defendant's intent to communicate her threat to the intended victim. *Id.* at 282. Contrast *Commonwealth* v. *Furst*, 56 Mass. App. Ct. 283, 284-285 (2002), in which the defendant asked a third party to contrive the death of her estranged husband. We thought it unlikely that someone hiring an assassin intends that the assassin spill the beans to the intended victim.[2]

In the case before us, tried before the opinions discussed above were published, the trial judge correctly instructed the jury. She told the jurors that:

> "[T]he Commonwealth must prove not only such a threat was made but that Kenneth Hughes, the defendant here, made the threat with the intention of placing Loray Brooks in imminent fear of death or bodily injury."
>
> ". . .

---

[2]For an example of direct communication of threats in a stalking case, see *Commonwealth* v. *Matsos*, 421 Mass. 391, 395-396 (1995).

"[The Commonwealth] must prove beyond a reasonable doubt that the defendant intended the threat to be conveyed to Loray Brooks and intended that — and that is necessary because what must be proved is that he intended to put her in fear of immediate bodily injury or death and so it is necessary for the Commonwealth to prove that he intended that threat to be conveyed to her, whether or not it was."

So instructed, the jury, on the evidence, could find that the defendant intended his remarks to his brother Derrick, that Brooks had reason to be more afraid of him than before and so forth, to be passed on to Brooks. Derrick, it bears repeating, had played the role of intermediary between Hughes and Brooks. The jury could also find that Hughes's statement to Derrick that Brooks would need to be still more afraid of him and that he would go around his brother, if need be, to hurt her, would have made Brooks fear imminent death or bodily injury.

*Judgment affirmed.*