COMMONWEALTH vs. JONATHAN P. GORDON.

Essex. January 9, 1990. - May 14, 1990.

Present: LIACOS, C.J., ABRAMS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Abuse Prevention. Protective Order. Evidence*, Relevancy and materiality, Redirect examination. *Words*, "Abuse," "Vacate."

Discussion of G. L. c. 209A, with respect to violations of protective orders issued under § 3 thereof and to the imposition of criminal sanctions. [344-345]

A protective order issued pursuant to G. L. c. 209A, requiring the defendant to "immediately leave and remain away from the [marital] household" was consonant with the terms of G. L. c. 209A, § 7, requiring a defendant to "vacate the household," with the result that the defendant was properly found criminally liable for violation of the order for returning to the marital home for visits. [345-348]

The evidence presented at the trial of a complaint for violation of a protective order issued under G. L. c. 209A supported the jury's finding that the defendant failed to "remain away" from the marital household as ordered, and the defendant's motion for a required finding of not guilty was properly denied. [348]

The definition of "abuse" provided by G. L. c. 209A, § 1, was construed, consonant with the common law definition of assault, to mean an act placing another in reasonable apprehension that force may be used. [348-349]

The evidence presented at the trial of a complaint for violation of a protective order issued under G. L. c. 209A supported the jury's finding that the defendant's wife was in reasonable apprehension that her husband might physically abuse her, and the defendant's motion for a required finding of not guilty was properly denied. [349-350]

No issue with respect to a criminal defendant's motion for a mistrial was presented for appellate review. [350]

Evidence of a confrontation between a criminal defendant and his wife five days before he was arrested and charged with violation of a protective order issued under G. L. c. 209A, was relevant and admissible at the trial of the complaint for the violation to show the wife's reasonable fear of her husband. [351]

At a criminal trial the judge properly admitted certain rebuttal evidence on redirect examination where the subject had been opened by defense counsel on cross-examination. [352]

There was no error in the jury instructions at the trial of a complaint for violation of a G. L. c. 209A protective order. [352-353]

COMPLAINT received and sworn to in the Newburyport Division of the District Court Department on November 15, 1988.

On transfer to the jury session of the Haverhill Division, the case was tried before *William H. Sullivan*, J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Julian Soshnick* (*Bruce Garr* with him) for the defendant.

*Margaret J. Perry*, Assistant District Attorney, for the Commonwealth.

LIACOS, C.J. On January 4, 1989, tried before a jury of six in the Haverhill Division of the District Court Department, the defendant, Jonathan P. Gordon, was found guilty of violating a protective order issued pursuant to G. L. c. 209A (1988 ed.). He was sentenced by the judge to one year in a house of correction.[1] The defendant now appeals from his conviction, asserting various errors in the trial below. We affirm the conviction.

The evidence submitted at trial warranted the jury finding the following facts. The defendant and Karen Gordon (Karen) had been married for eleven years when, on May 31, 1988, the couple separated in anticipation of divorce. On July 26, 1988, following a hearing at which the defendant was present, a judge of the District Court issued an order pursuant to G. L. c. 209A (209A order) requiring the defendant "to refrain from abusing [Karen]" and to "immedi-

---

[1] The judge ordered the defendant to serve thirty days, and suspended the remainder of the sentence. A fine of $5,000 also was imposed, but was reduced subsequently to $500. The defendant sought a stay of execution of his sentence from a single justice of the Appeals Court and a single justice of this court, pending an appeal from his conviction. Both requests for a stay were denied.

ately leave and remain away from the [marital] household."
The order also awarded temporary custody of the couple's
two children to Karen and directed the defendant to pay
$700 each month for the temporary support of the children.
This order was to remain in effect from July 26, 1988, to
July 26, 1989.

Between July 26, 1988, and November 10, 1988, the de-
fendant came to the marital home on five separate occasions.
Generally, these visits were to see his children. On November
10, 1988, the defendant telephoned Karen and asked if she
would type a paper for a friend. She agreed, and the defend-
ant came to the house to deliver the paper. During this visit,
the defendant and Karen became involved in an argument
when the defendant learned that Karen had been dating an-
other man. The defendant yelled at his wife in front of their
five year old son, calling her a "bitch" and a "whore." Karen
testified at trial that, at this time, she was "upset" and felt
"insecure"; she stated that she "didn't know what [the de-
fendant] was going to do next."

Five days later, on November 15, 1988, the defendant re-
turned to the house unannounced. Karen's brother and a
neighbor were visiting at that time, and Karen sent her
neighbor upstairs with the Gordons' older son to telephone
the police. The defendant came to the outside of the front
door of the house and urged Karen to let him in. He stated
that he wanted to talk, but Karen did not respond or open
the door. The defendant said that Karen was being "imma-
ture and ridiculous." The defendant left a note on the front
door, returned to his automobile, and started to back out of
the driveway. When Karen opened the door to take the note,
the defendant left his automobile, walked up to the house,
and stood with a foot on the threshold, his back resting
against the front door, holding it open.

At this point, two officers of the Newbury police depart-
ment arrived at the house. Lieutenant Rick Frappier ordered
the defendant away from the door and arrested him for viola-
tion of the 209A order. The other police officer went into the
house to speak with Karen, who stated that the defendant

had not abused her physically during his visit. Lieutenant Frappier later filed a report incident to the defendant's arrest, which stated that "[the defendant] did not appear to be abusive nor did he make physical contact with [Karen]."[2]

On appeal, the defendant contends that the trial judge erred in denying a motion for directed verdict and a motion for mistrial. The defendant also claims that the judge impermissibly admitted irrelevant and prejudicial evidence, and failed to instruct the jury properly regarding what acts would constitute a violation of the 209A order. Finally, the defendant argues that G. L. c. 209A, § 7, which makes criminal the violation of certain sections of a 209A order, fails to give clear warning as to what activities are proscribed. We address each claim in turn.

1. *Denial of the defendant's motion for a required finding of not guilty.* At the close of the Commonwealth's case, defense counsel moved for a required finding of not guilty. In support of the motion, defense counsel argued that G. L. c. 209A, § 7, makes criminal only the violation of a 209A order to "refrain from abus[e]" or to "vacate the household," and claimed that the Commonwealth had failed to present sufficient evidence to prove beyond a reasonable doubt that the defendant had either "abused" his wife on November 15, 1988, or that he had failed to "vacate" the marital home by November 15, 1988. The judge denied the defendant's motion.

In reviewing the denial of a motion for a required finding of not guilty, we must determine " 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt' (emphasis in original)." *Commonwealth* v. *Latimore*, 378 Mass. 671, 677 (1979), quoting *Jackson* v. *Virginia*, 443 U.S. 307, 318-319 (1979). See *Commonwealth* v. *Merola*, 405 Mass. 529, 533 (1989); Mass. R. Crim. P. 25 (a), 378 Mass. 896 (1979). In

---

[2]The defendant did not testify, and no witnesses were presented in his behalf.

this regard, we note that "[c]ircumstantial evidence is competent to establish guilt beyond a reasonable doubt . . . [and] [a]n inference drawn from circumstantial evidence 'need only be reasonable and possible; it need not be necessary or inescapable.' " *Commonwealth* v. *Merola, supra,* quoting *Commonwealth* v. *Beckett,* 373 Mass. 329, 341 (1977).

The defendant's argument in support of his motion for a required finding of not guilty encompasses not only a dispute as to the testimony presented below and the inferences which reasonably can be drawn therefrom, but it also raises questions regarding the necessary elements of a criminal violation of G. L. c. 209A. Specifically, the defendant claims that he cannot be found to have "abused" his wife in violation of G. L. c. 209A, § 7, unless he physically harmed her or made some outwardly threatening gesture which put her in fear of "imminent serious physical harm." In addition, the defendant claims that a 209A order to "vacate the household" only requires him to surrender his residency at the marital home and does not prohibit him from returning to the home for visits. This court has not faced these issues before. A short review of the structure of G. L. c. 209A, as it relates to the present case, is in order.

General Laws c. 209A, entitled "Abuse Prevention," provides a statutory mechanism by which victims of family or household abuse can enlist the aid of the State to prevent further abuse. "Abuse" is defined as "the occurrence of one or more of the following acts between family or household members: (*a*) attempting to cause or causing physical harm; (*b*) placing another in fear of imminent serious physical harm; (*c*) causing another to engage involuntarily in sexual relations by force, threat of force or duress." G. L. c. 209A, § 1.

Under § 3 of c. 209A, "[a] person suffering from abuse from an adult or minor family or household member may file a complaint in the court requesting protection from such abuse . . . ." The complainant may request the court to issue orders which: (1) "[order] the defendant to refrain from abusing the plaintiff," (2) "[order] the defendant to vacate

forthwith the household," (3) "[award] the plaintiff . . . temporary custody of a minor child," (4) "[order] the defendant to pay temporary support for the plaintiff or any child in the plaintiff's custody or both," (5) "[order] the defendant to pay to the person abused monetary compensation for losses suffered as a direct result of . . . abuse," and (6) "[order] the plaintiff's address to be impounded." G. L. c. 209A, § 3 (*a*)-(*f*). Any orders issued by the court are for a fixed period of time not to exceed one year. On the expiration of an order, the plaintiff may move for an extension, which the court may grant if it is needed to protect the plaintiff from abuse. *Id.*

While the court is entitled to issue any of the orders which the complainant may request under § 3, c. 209A appears to anticipate that only a violation of an order to refrain from abuse, or an order to vacate the household, will represent a criminal offense. Section 7 of c. 209A requires any order to refrain from abuse or to vacate the household to contain the statement: "VIOLATION OF THIS ORDER IS A CRIMINAL OFFENSE," and provides that a violation of either of these types of orders "shall be punishable by a fine of not more than five thousand dollars or by imprisonment for not more than two and one-half years in a house of correction or both such fine and imprisonment." In contrast, no specific criminal sanctions are provided for violations of 209A orders other than orders to refrain from abuse or orders to vacate the household. Furthermore, no statements warning of criminal liability for violations are required for any 209A orders other than those described in § 7.

a. *Order to vacate the household.* The defendant argues that, while the judge below issued a 209A order requiring him to "immediately leave and remain away from the [marital household],"criminal liability may attach for a violation of the order only in so far as there is a failure to "vacate the household," as is provided in § 7. The defendant argues further that the order to "vacate" was satisfied when he surrendered legal occupancy in the house, and that § 7 did not require him to "remain away" from the house. Therefore, he concludes, he cannot be found criminally liable for returning

to the marital home for visits, regardless of the terms of the 209A order below. We disagree. The defendant has misconstrued the scope of the term "vacate" as it is used in c. 209A.

In determining the range of activity the Legislature intended to prohibit by authorizing courts to issue orders requiring defendants to "vacate" the marital home, this court must look to the words of the statute "construed by the ordinary and approved usage of the language, considered in connection with the cause of [the statute's] enactment, the mischief or imperfection to be remedied and the main object to be accomplished." *O'Brien* v. *Director of the Div. of Employment Sec.*, 393 Mass. 482, 487-488 (1984), quoting *Industrial Fin. Corp.* v. *State Tax Comm'n*, 367 Mass. 360, 364 (1975). Chapter 209A, while allowing an order to "vacate," provides no particular definition for the term. Webster's New Int'l Dictionary 2810 (2d ed. 1957) defines "vacate" as "3. [t]o make vacant, as an office, post, house, etc.; to deprive of an incumbent or occupant." While this definition makes clear the fact that the Legislature intended an abusive defendant to depart from the house, it provides no guidance in either a negative or affirmative direction whether the Legislature intended to require such a defendant to stay away from the house subsequent to the initial departure. The Legislature's intention, however, becomes clear when we consider the "mischief or imperfection" with which c. 209A is concerned and "the main object" which c. 209A seeks to accomplish. *O'Brien* v. *Director of the Div. of Employment Sec.*, *supra* at 488.

As we discussed earlier, c. 209A represents a legislative response to the troubling social problem of family and household abuse in the Commonwealth. Judicial orders issued pursuant to c. 209A afford abused individuals the opportunity to avoid further abuse and provide them with assistance in structuring some of the basic aspects of their lives, such as economic support and custody of minor children, in accordance with their right not to be abused.

Of the types of orders allowed under c. 209A, orders requiring an abusive defendant to "refrain from abusing" a family or household member and to "vacate" the household have been accorded the most importance by the Legislature, as is demonstrated by the criminal sanctions prescribed for violations thereof. The significance attached to these two types of orders is eminently reasonable, in that they both serve directly to support the statute's primary goal of abuse prevention. An order to "refrain from abus[e]" serves the obvious purpose of putting an abusive party on notice of the possibility of criminal penalties, thereby deterring further abuse. An order to "vacate the household," on the other hand, creates a haven for the abused party in which no further abuse need be feared and provides a temporary, partial separation of the abused and abusive party, thereby leaving fewer opportunities for abusive contact.

Were we to adopt the defendant's definition of "vacate," an abusive party, having surrendered occupancy of the household, would be free to return to the house at will. The abused party would have no ability to lessen the abusive party's prerogative to initiate contact and could expect no refuge from the possibility of further abuse. That the Legislature intended the word "vacate" to include the concept of "remain away" is demonstrated by the authority of a judge to issue a "vacate" order for a period of one year. G. L. c. 209A, § 3 (b). See G. L. c. 266, § 120 (1988 ed.) (making it a criminal trespass to "enter" in violation of an order under G. L. c. 209A). The Legislature can be assumed to know that opportunities for abuse do not ebb or flow automatically according to the pull of the legal notion of occupancy; a true haven from abuse exists only where an abusive party has no right to enter at any time.

The 209A order issued below, which required the defendant to "immediately leave and remain away from the [marital] household" was entirely consonant with the terms of G. L. c. 209A, § 7, requiring a defendant to "vacate the

household." Accordingly, the defendant may be held criminally liable for the violation of the 209A order.[3]

The evidence presented supported a conclusion that the defendant failed to "remain away" from the house in violation of the 209A order. On such evidence, the jury clearly were entitled to find the defendant guilty under G. L. c. 209A, § 7, for violating an order to "vacate" the house. The defendant's motion for a required finding of not guilty regarding the order to "vacate" was appropriately denied.

b. *Order to refrain from abuse.* For the purposes of criminal punishment under G. L. c. 209A, § 7, a party violates an order to "refrain from abus[e]" when he or she: (1) "attempt[s] to cause or caus[es] physical harm"; (2) "place[s] another in fear of imminent serious physical harm"; or (3) "caus[es] another to engage involuntarily in sexual relations by force, threat of force or duress." G. L. c. 209A, § 1. In the present case, there have been no allegations that the defendant either physically harmed or attempted physically to harm his wife on the date of his arrest. Furthermore, there have been no allegations that he caused his wife to engage involuntarily in sexual relations. Therefore, any claim of a violation of the order to refrain from abuse must have been

---

[3]The defendant argues that, even though his acts may have constituted a violation of G. L. c. 209A, § 7, he cannot be held criminally liable because the phrase "vacate the household" was not sufficiently explicit to give him clear meaning of the activities proscribed under § 7 at the time of his arrest. "We have not hesitated to relieve defendants of criminal responsibility where the law was so unsettled or unclear that it did not provide fair notice of what conduct was forbidden." *Commonwealth v. Chretien*, 383 Mass. 123, 132 (1981). However, the 209A order below, which carried the warning "VIOLATION OF THIS ORDER IS A CRIMINAL OFFENSE," ordered the defendant to "immediately leave and *remain away* from the [marital] household" (emphasis added). The terms of the order put the defendant on notice as to precisely the range of activity that was forbidden. He cannot reasonably claim that he was unaware that he risked criminal punishment for failing to "remain away" from the house. The particularity of the terms of the 209A order, of which the defendant was well aware, leads us to reject the defendant's request that we apply our holding today in a prospective manner only. See *Commonwealth v. Klein*, 372 Mass. 823, 833 (1977).

based on an allegation that the defendant "plac[ed his wife] in fear of imminent serious physical harm."

The defendant claims that the test whether such fear exists must be objective, and that his actions on November 15, 1988, cannot be found to have created an objective fear of "imminent serious physical harm." In support of his conclusion, the defendant directs our attention to the fact that, at trial, Karen did not testify that she was in fear of "imminent serious physical harm" at the time of the defendant's visit, and claims that the evidence presented below demonstrates that he made no outwardly threatening or menacing gestures toward his wife.

The relevant definition of "abuse" provided by G. L. c. 209A, § 1, "placing another in fear of imminent serious physical harm," closely approximates the common law description of the crime of assault. We must presume that the Legislature was aware of the common law definition of assault when it provided a similar definition for "abuse" in c. 209A. *Selectmen of Topsfield v. State Racing Comm'n*, 324 Mass. 309, 313 (1949). Accordingly, we turn to the common law treatment of assault for guidance in our examination of c. 209A.

Under the common law, "it is well established . . . that an act placing another in reasonable apprehension that force may be used is sufficient for the offense of criminal assault." *Commonwealth v. Delgado*, 367 Mass. 432, 437 (1975), and cases cited. In determining whether an apprehension of anticipated physical force is reasonable, a court will look to the actions and words of the defendant in light of the attendant circumstances. *Id.* at 436-437. See *Commonwealth v. Tarrant*, 367 Mass. 411, 414-416 (1975). In a criminal assault, the Commonwealth need not prove that the victim was in fear. "[N]either fear, nor terror nor apprehension of harm is an essential ingredient of the common law crime of assault." *Commonwealth v. Slaney*, 345 Mass. 135, 139 (1962).

In the present case, there was evidence of a verbal outburst between the defendant and Karen five days before the incident in question, during which the defendant called his

wife a "bitch" and a "whore." Karen testified that, at this time, she was "upset," and that she "didn't know what [the defendant] was going to do next." At the next meeting between Karen and the defendant, on November 15, 1988, the defendant arrived at the house unannounced, and when Karen refused to respond to the defendant's requests that she open the door, the defendant said that Karen was being "immature and ridiculous." Despite Karen's obvious unwillingness to speak with him, the defendant left his automobile when she appeared and prevented Karen from closing the front door by propping his back against it.

In these circumstances, we cannot say that a jury could not conclude beyond a reasonable doubt that Karen entertained a reasonable apprehension that her husband might physically abuse her. The fact that the defendant had violated an order to remain away from the house, the evidence of the tension between the parties, the previous verbal abuse by the defendant, and the defendant's physical actions in holding open the door when Karen clearly desired to avoid contact could reasonably be combined by the jury to create a picture of a volatile situation in which the possibility of physical abuse was present. Moreover, the fact that the prosecutor did not ask Karen whether she anticipated physical abuse does not preclude such a conclusion on the part of the jury. The jury were entitled to draw reasonable inferences from the circumstantial evidence described above. See *Commonwealth* v. *Walker*, 401 Mass. 338, 342-343 (1987). The denial of the defendant's motion for a required finding of not guilty was appropriate.

2. *Denial of the defendant's motion for a mistrial.* The defendant claims error in the denial of his motion for a mistrial. The defendant states his claim on appeal in conclusory fashion and cites no legal authority to support his claim. "This is an insufficient appellate argument and is not properly before us. Mass. R. A. P. 16 (a) (4), as amended, 367 Mass. 921 (1975)." *Commonwealth* v. *Silva*, 401 Mass. 318, 327 (1987).

3. *Admission of evidence.* The defendant claims that the judge erred by allowing the admission of evidence regarding a confrontation between Karen and the defendant at the marital household on November 10, 1988. During this confrontation, which was the last contact between Karen and the defendant prior to the visit of November 15, the defendant learned that Karen had become involved with another man. He yelled at Karen, calling her a "bitch" and a "whore." The defendant claims on appeal that evidence regarding this incident was irrelevant to the material issues in this case. We disagree.

"The relevancy of proffered evidence depends on whether it tends to prove some issue in the case on trial." *Commonwealth* v. *Chretien, supra* at 135. "Evidence need not establish directly the proposition sought; it must only provide a link in the chain of proof." *Commonwealth* v. *Tobin*, 392 Mass. 604, 613 (1984). Evidence that the defendant was angry with Karen for seeing another man, and that he had called her a "bitch" and a "whore" during their last contact prior to his arrest was relevant to proving that Karen was in fear of her husband. See, e.g., *Commonwealth* v. *Mora*, 402 Mass. 262, 267-268 (1988); *Commonwealth* v. *Person*, 400 Mass. 136, 143 (1987). Furthermore, such evidence provided support for the prosecution's assertion that Karen's fear of physical harm was reasonable, because it had roots in the defendant's outburst just five days earlier. "[R]elevant evidence should be admitted unless there is a quite satisfactory reason for excluding it." *Green* v. *Richmond*, 369 Mass. 47, 59 (1975).[4] This evidence was relevant and admissible. See P.J. Liacos, Massachusetts Evidence 408 (5th ed. 1981 & Supp. 1985).

---

[4] The defendant claims that the evidence regarding the incident on November 10, 1988, was inadmissible because it was unduly prejudicial, but he provides no explanation. "We accord the judge substantial discretion in deciding whether . . . the prejudicial implications of [relevant] evidence outweigh its probative value." *Commonwealth* v. *Tobin, supra* at 613. We perceive no unfair prejudice to the defendant's case arising out of the admission of this evidence. There was no abuse of discretion.

The defendant also claims that the judge improperly allowed the admission of Karen's testimony that three checks given her by the defendant during their separation had "bounced." This testimony arose in response to questions by the prosecution on redirect examination. When the defendant objected to its admission, the judge ruled that the evidence was admissible because defense counsel had raised the issue of the checks during cross-examination of Karen.

"The scope of redirect examination of a witness is within the sound discretion of the trial judge." *Commonwealth* v. *Maltais*, 387 Mass. 79, 92 (1982). "A defendant who claims, on appeal, an abuse of discretion, assumes a heavy burden." *Id.* In this case, that burden has not been met.

The defendant had raised the issue of the checks when he questioned Karen as to whether one of the defendant's prior visits had been for the purpose of "bringing [Karen] a check which [she] then took down to the bank for deposit." In pursuing this line of questioning, defense counsel could have been attempting to prove to the jury that an amiable relationship existed between the defendant and Karen, thereby casting doubt on the prosecution's assertion that Karen had reason to fear the defendant. Karen's testimony on redirect examination merely explored in more detail a subject opened up by defense counsel on cross-examination, and served to rebut the inference that the relationship between the defendant and Karen was without tension. See *Commonwealth* v. *Mandeville*, 386 Mass. 393, 400 (1982). "The purpose of redirect examination is to explain or rebut adverse testimony or inferences developed during cross-examination." *Commonwealth* v. *Hoffer*, 375 Mass. 369, 375 (1978). There was no error.

4. *Jury instructions.* The defendant claims that the judge committed reversible error in his instructions to the jury, and in his rejection of two of the defendant's proposed jury instructions. In essence, the defendant's claims in this regard suggest that the judge should have instructed the jury that a failure to remain away from the marital home does not constitute a violation of c. 209A. We have already rejected this

position. See section 1, *supra*. There was no error in the jury instructions.

As we perceive no error by the judge in the trial below, the defendant's conviction is affirmed.

*Judgment affirmed.*