## Anthony Parreira vs. Commonwealth.

Suffolk. March 5, 2012. - July 9, 2012.

Present: Ireland, C.J., Spina, Cordy, Botsford, Gants, Duffly, & Lenk, JJ.

*Constitutional Law,* Plea, Double jeopardy. *Practice, Criminal,* Plea, Double jeopardy, Conduct of judge. *Assault and Battery. Breaking and Entering.*

Principles of double jeopardy did not prohibit the retrial of a criminal defendant who had recanted his plea of guilty, where the record did not support an inference that the District Court judge acted to prejudice the defendant when, at sidebar, he assessed the evidence of guilt as being strong and implied that he expected the jury to agree [670-671]; and where the evidence was sufficient to convict the defendant of assault [671-672] and breaking and entering [672-675].

Civil action commenced in the Supreme Judicial Court for the county of Suffolk on February 24, 2011.

The case was reported by *Gants,* J.

*Estera Halpern* for the defendant.

*Casey E. Silvia,* Assistant District Attorney, for the Commonwealth.

Lenk, J. We are asked to decide whether Anthony Parreira (defendant), whose guilty plea was vacated as the product of judicial coercion, may be retried consistent with principles of double jeopardy. Because the circumstances of the trial do not support an inference that the trial judge acted out of a desire to preempt an acquittal by the jury, and because the Commonwealth presented sufficient evidence to support a conviction on both charges, we conclude that retrial is appropriate.

1. *Background.* a. *Facts.* The defendant's claims require, among other things, consideration of the legal sufficiency of the evidence at trial. We therefore present the background facts in some detail, stating them in the light most favorable to the Commonwealth. See *Commonwealth* v. *Latimore,* 378 Mass. 671, 677 (1979).

The defendant and the alleged victim, Carolina Marques, had been romantically involved. On October 30, 2004, Marques told the defendant that she was ending their relationship. Marques spent that night at the residence of Louis Albino, a friend of the defendant's from Marlborough High School, where they were both students.

At about 5 A.M. the following morning, Albino was awakened by the sound of knocking on his apartment door; he did not respond. Soon thereafter, he heard sounds at his bedroom window. Recognizing the defendant through the window, Albino asked him what he was doing. The defendant indicated that he was looking for Marques. Despite Albino's protests, and his assurances that Marques was not in the apartment, the defendant opened the window, "forcefully, and jumped right through" it head first.[1]

"Real[ly] angry" and "anxious," the defendant asked Albino again where Marques was. Not immediately seeing Marques in the room — she was hiding under the covers of Albino's bed — the defendant searched the rest of the apartment, including Albino's mother's room. He eventually returned to the bedroom, this time seeing Marques. The defendant pushed Albino out of the room, and closed and locked the bedroom door.

Through the door, Albino heard the defendant and Marques arguing. When, minutes later,[2] the defendant opened the door, Marques was crying. Albino told the defendant to "leave her alone," and the two began arguing as well. In the course of that argument, the defendant threatened to kill Albino.

Shortly thereafter, the defendant "physically moved" Marques, "basically put[ting] her in the bathroom." Seeing this, Albino contacted a police officer with whom he had a personal acquaintance. He alerted the defendant that he had notified the police, and the defendant left, "speeding" away from the apartment complex.

b. *Proceedings.* The defendant was charged in the District Court with breaking and entering with the intent to commit a

---

[1]Louis Albino attempted to resist and close the window, but the defendant's fingers were in the way.

[2]Albino was imprecise on the chronology of events but suggested that the entire sequence of events took, "at the most," twenty minutes.

misdemeanor, G. L. c. 266, § 16A, and assault, G. L. c. 265, § 13A. A jury trial began on May 3, 2005.

At trial, the Commonwealth presented testimony from Albino and from two other witnesses, both police officers. Marques did not testify, having not responded to the prosecutor's repeated attempts to speak with her before trial, and having failed to appear in response to a subpoena.[3] The prosecutor did not seek a continuance, electing instead to proceed without her.

After the Commonwealth's final witness had testified, the prosecutor asked for a sidebar, seeking "a minute to see" whether Marques had arrived. While they waited, the judge asked the prosecutor, "[W]hat's your last best offer for [the defendant] right now?" The prosecutor reiterated her pretrial offer of a suspended, two and one-half year sentence.

The judge then indicated that he would likely be more severe, saying that, if the defendant were convicted on the assault charge, "he's got to do time." Defense counsel responded that, based on his observation of the trial thus far, and unless the judge were to grant his motion for a required finding of not guilty, it "look[ed] like" the defendant would be convicted of assault.[4]

Indicating that he was unlikely to grant the motion, the judge again warned defense counsel that he had not "heard anything why I wouldn't, based on these circumstances . . . put [the defendant] in jail." The judge added, "[T]he facts are kind of egregious and, I don't know why he wasn't charged with house

---

[3]Although considering Carolina Marques a "necessary and essential witness," the prosecutor did not obtain in-hand service of the subpoena, and was therefore unable to compel Marques's appearance by use of a bench warrant.

[4]The relevant portion of the transcript reads:

THE JUDGE:        "Chapter 265 on the assault if he's hooked on [*sic*] he's got to do time."

DEFENSE COUNSEL: "I thought that was part of the [inaudible] — maybe he's not going to get off on the A&B, but it looks like he's going to get hooked on the assault unless something strange happens."

Although the import of defense counsel's statement is arguably ambiguous, the most natural reading is that he thought it likely the jury would vote to convict on the assault charge, the more serious of the two charges. This is the interpretation the Commonwealth adopts in its brief, and the defendant has not taken issue with that interpretation.

invasion." At that point, the sidebar conference ended, and defense counsel conferred with his client. Almost immediately thereafter, the defendant entered a plea of guilty to both charges.

The defendant later moved, before the same judge, to vacate his pleas and obtain a new trial. After this motion was granted, the defendant filed a motion to dismiss the charges against him on double jeopardy grounds, arguing both that the evidence against him at the first trial was insufficient to support convictions on either charge and that, regardless of the sufficiency of the evidence, he should not be forced to face retrial where the first trial terminated as a result of judicial impropriety. A different judge denied this motion, and the defendant sought relief in the county court. See G. L. c. 211, § 3. The single justice reserved and reported the case to the full court.

2. *Discussion.* There is no question, and the Commonwealth does not dispute, that the defendant's plea was voidable at his option. See *Commonwealth* v. *Colon-Cruz*, 393 Mass. 150, 169 (1984), citing *Letters* v. *Commonwealth*, 346 Mass. 403, 405, 406 (1963). Accordingly, the sole issue before us is whether the defendant, having recanted his plea, may be retried.

a. *Alleged judicial error.* "Corresponding to the right of an accused to be given a fair trial is the societal interest in punishing one whose guilt is clear after he has obtained such a trial." *United States* v. *Tateo*, 377 U.S. 463, 466 (1964). We will not lightly preclude the Commonwealth from vindicating the societal interest in a fair adjudication of the defendant's guilt. Cf. *Burks* v. *United States*, 437 U.S. 1, 15 (1978). Rather, where a trial is aborted due to judicial impropriety or error, retrial will generally be barred only where the judge "intended to provoke the defendant into moving for a mistrial," or otherwise intended to preempt the possibility of an acquittal.[5] *Oregon* v. *Kennedy*, 456 U.S. 667, 679 (1982). See *Commonwealth* v. *Ellis*, 432 Mass. 746, 752 (2000), and cases cited ("Absent evidence that the judge acted in bad faith, alleged judicial errors giving rise to a mistrial do not support a claim of double jeopardy"). Evidence of bad faith need not be direct, and intent may be inferred

---

[5]The defendant does not contend that he has suffered irremediable prejudice "that prevents the possibility of a fair [re]trial." See *Commonwealth* v. *Lam Hue To*, 391 Mass. 301, 314 (1984).

"from objective facts and circumstances" surrounding the trial.[6] *Oregon* v. *Kennedy, supra* at 675.

The record does not support the inference that the judge acted to prejudice the defendant. The judge assessed the evidence of guilt as being strong,[7] and the record suggests that he expected the jury to agree. Indeed, the transcript of the sidebar conference suggests that all present, including defense counsel, believed that the jury would most likely convict the defendant on the more serious charge of assault.

The defendant places considerable emphasis on Marques's failure to appear. While the Commonwealth's case might well have been stronger had Marques chosen to participate, her failure to appear did not prevent the Commonwealth from presenting a full account of the night's events through Albino's detailed testimony. We note that the prosecutor did not ask for a continuance when Marques failed to appear and had not previously sought in-hand service on Marques.

Given this context, the natural inference is that the judge did not act out of concern that the defendant would be acquitted. See *Choy* v. *Commonwealth,* 456 Mass. 146, 152, cert. denied, 131 S. Ct. 425 (2010) (judicial bad faith will not easily be inferred). We do not condone the judge's statements at sidebar. Nevertheless, so long as the judge did not act to prejudice the defendant, his actions do not preclude the Commonwealth from retrying the defendant and obtaining a fair adjudication of the defendant's guilt. See *Oregon* v. *Kennedy, supra* at 679. See also *Commonwealth* v. *Lam Hue To,* 391 Mass. 301, 311 (1984).

b. *Sufficiency of the evidence.* When, after the close of the

---

[6]The United States Supreme Court has not "specif[ied] factors that might guide the lower courts in such an analysis. Several Circuit Courts, however, have considered the following factors: (1) whether [there was] reason to believe the jury might acquit the defendant; (2) whether the government stood to gain from a mistrial; and (3) whether the prosecution proffered some plausible justification for its actions." United States *vs.* Archibald, U.S. Dist. Ct., No. Crim. A. 02-CR-335-1 (E.D. Pa. Feb. 26, 2003), and cases cited. See, e.g., *United States* v. *Barnard,* 318 Fed. Appx. 143, 145 (3d Cir. 2009), citing *United States* v. *Curtis,* 683 F.2d 769, 777-778 (3d Cir.), cert. denied, 459 U.S. 1018 (1982) (listing identical factors).

[7]The judge expressed strong skepticism at the defendant's motion for a required finding, explaining, "Let me see, she's in bed, he breaks in, he threatens the man she's with, and he pushes her into a bathroom, works for me."

Commonwealth's case,[8] a criminal trial is aborted for reasons not attributable to the defendant, we "examine the evidence . . . to determine if it was sufficient to support a guilty verdict." *Hrycenko* v. *Commonwealth*, 459 Mass. 503, 507 (2011), quoting *Choy* v. *Commonwealth, supra* at 150. The Commonwealth may only retry the defendant on a charged offense if it presented, at the first trial, legally sufficient proof to sustain a conviction. See *Berry* v. *Commonwealth*, 393 Mass. 793, 797-798 (1985). The Commonwealth has met this burden as to both charges.

i. *Assault.* There is no doubt that the defendant properly could have been convicted of assault on Marques. Albino's testimony that the defendant "physically moved" Marques to another room sufficiently evidenced an offensive touching and, thus, a battery. *Commonwealth* v. *Burke*, 390 Mass. 480, 482 (1983). This, in turn, suffices to show an assault. See *Commonwealth* v. *Stratton*, 114 Mass. 303, 304 (1873).

ii. *Breaking and entering.* The Commonwealth also presented sufficient evidence on the breaking and entering charge. A defendant violates G. L. c. 266, § 16A, if he or she "[1] breaks and [2] enters [3] a building [or other covered structure] [4] with intent to commit a misdemeanor."

The Commonwealth presented testimony that the defendant opened and jumped through a bedroom window, which plainly suffices to establish the elements of breaking and entering a building. See *Commonwealth* v. *Stephenson*, 8 Pick. 354, 355 (1829). The defendant emphasizes that "[i]n the lexicon of Massachusetts crimes there is no such crime as 'breaking and entering' unaccompanied by intent to commit a felony or a misdemeanor."[9] *Commonwealth* v. *Greene*, 461 Mass. 1011, 1012 (2012), quoting *Commonwealth* v. *Vinnicombe*, 28 Mass. App. Ct. 934, 935 (1990). The Commonwealth, however, presented evidence from which the jury could have inferred that the defendant entered the apartment intending to commit an assault.

The crime of assault may be committed in one of two ways: by attempting (or achieving) a battery, see part 2.b.i, *supra*, or

---

[8]Toward the end of the sidebar conference, the prosecutor indicated that Marques could not be located, and said, "[T]he Commonwealth is going to rest."

[9]The defendant was not charged with criminal trespass, a distinct statutory offense. See G. L. c. 266, § 120.

by engaging in objectively menacing conduct so as to place another in reasonable apprehension of an immediately threatened battery. *Commonwealth* v. *Melton*, 436 Mass. 291, 294-295 & n.4 (2002), and cases cited. In determining whether the defendant intended, upon breaking and entering the bedroom, to commit either of these forms of assault, the jury would have been entitled to rely upon the objective circumstances surrounding his entry. *Commonwealth* v. *Lauzier*, 53 Mass. App. Ct. 626, 629 (2002). See *Commonwealth* v. *Shedd*, 140 Mass. 451, 453 (1886). Here, whether or not those circumstances permit the inference that the defendant intended to attempt a battery at the time of entry,[10] they might reasonably suggest that he intended to (and in fact did) commit an assault by objectively menacing conduct.

"In determining whether an apprehension of anticipated physical force is reasonable, a court will look to the actions and words of the defendant in light of the attendant circumstances." *Commonwealth* v. *Gordon*, 407 Mass. 340, 349 (1990). As has been indicated before, erratic and unstable behavior, in the context of an escalating and emotional argument, can create a reasonable apprehension that "force might be used." *Commonwealth* v. *Robicheau*, 421 Mass. 176, 181-182 (1995). See, e.g., *Ginsberg* v. *Blacker*, 67 Mass. App. Ct. 139, 143-144 (2006).

Here, taken in the light most favorable to the Commonwealth, the defendant's behavior was highly erratic and unstable, and quickly escalating. The defendant, who was "angry" and "anxious," had come to Albino's apartment in the middle of the night, looking for Marques. He entered the apartment forcibly, overcoming Albino's resistance and jumping in headfirst through the window. He then proceeded to search the whole apartment for Marques. On finding her in Albino's bed, he "pushed [Albino]

---

[10]The fact that a defendant ultimately commits a crime within the premises is, in general, strongly corroborative of his previous criminal intent. *Commonwealth* v. *Carter*, 306 Mass. 141, 149 (1940). However, the eventual commission of a crime is not in every case determinative of a defendant's "specific intent at the time of entry to perpetrate that particular act." *Commonwealth* v. *Ronchetti*, 333 Mass. 78, 82 (1955). Particularly in the context of a rapidly escalating and emotional situation, the Commonwealth must provide some evidence that the defendant did not simply act on the spur of the moment, or as the result of some later provocation, but instead possessed a preformed intent at the time of entry to commit a crime. See *Commonwealth* v. *Lee*, 460 Mass. 64, 70 (2011).

out of the [bed]room" and locked the bedroom door, secluding Marques from her most obvious source of physical protection. The defendant could be heard through the door arguing with Marques, and he subsequently got into a verbal argument with Albino, during which the defendant threatened to kill Albino.

To find that the defendant entered with the intent to commit an assault, the jury need not have speculated whether at the time of entry the defendant intended to search the apartment angrily, or to seclude Marques from Albino. It is enough that the jury could have inferred that the defendant intended, notwithstanding Marques's clear desire to avoid contact with him, to seek her out at 5 a.m., to force his way into a dwelling where she was the overnight guest of another man, and, given his anger, to argue heatedly with her. See *Commonwealth* v. *Robicheau*, *supra* at 181 (defendant "got out of his automobile, stood in the middle of the street in front of [the victim's] residence, yelled obscene language, and made an obscene gesture"). Such behavior could reasonably have placed Marques in apprehension of an imminently threatened battery.

In *Commonwealth* v. *Gordon*, *supra* at 350, for example, the defendant violated an abuse prevention order by appearing at the victim's house. When the victim opened her front door to retrieve a note left by him, the defendant rested against the door, preventing it from being closed. We determined that, in light of the preexisting tension between the parties, and because the defendant was subject to a legal duty to keep away from the victim, his imposed physical proximity with the victim was sufficient to support his conviction. *Id.*

Both *Commonwealth* v. *Gordon*, *supra*, and *Commonwealth* v. *Robicheau*, *supra*, involved defendants prosecuted for abuse, G. L. c. 209A, § 1, and subject to abuse prevention orders. However, the conduct punished by the relevant provision of the abuse statute "closely approximates the common law description of the crime of assault," and we have treated cases involving either crime interchangeably. *Commonwealth* v. *Gordon*, *supra* at 349.

Further, while both Gordon and Robicheau were under preexisting legal duties to keep away from the victims of their assaults, the defendant, too, was under a legal duty not to enter

Albino's apartment without permission. See G. L. c. 266, § 120 (criminal trespass). Neither Gordon nor Robicheau forcibly entered a dwelling in the middle of the night, physically over-coming the efforts of those inside to keep him out. We cannot, therefore, say that Albino's account of the defendant's actions discloses conduct any less "erratic and unstable" than that underlying the convictions in *Commonwealth* v. *Robicheau*, *supra*, and *Commonwealth* v. *Gordon*, *supra*. The jury had before them sufficient evidence to demonstrate the defendant's intent at the time of entry to place Marques in reasonable apprehen-sion of an imminently threatened battery.

Having presented sufficient evidence to support convictions at the first trial, and absent a showing that the trial judge acted out of a desire to prejudice the defendant, the Commonwealth may retry the defendant. The judge was correct in denying the motion to dismiss.

3. *Conclusion.* The case is remanded to the county court where an order shall enter denying the petition for relief pursuant to G. L. c. 211, § 3.

*So ordered.*