NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-333

K.M.

vs.

J.P.M.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

This is an appeal from an order issued under G. L. c. 209A, § 3, after a two-party hearing. In this appeal, the defendant-appellant, J.P.M., argues that the evidence before the judge was insufficient to support the judge's conclusion that the defendant had committed "abuse" as defined in G. L. c. 209A, § 1. The question before us is whether the judge erred in concluding that the plaintiff, K.M., was in reasonable fear of imminent and serious physical harm. G. L. c. 209A, § 1. See Commonwealth v. Gordon, 407 Mass. 340, 349-350 (1990) (interpreting statute in conjunction with common-law definition of assault, such that it includes requirement that fear of imminent and serious physical harm be reasonable). We affirm.

The facts are well known to the parties and will not be recited in detail here. On September 25, 2022, the parties met

in a Dunkin' Donuts parking lot in Hanover to exchange their minor child for parenting time. The parties, who were married, had been living separately since August of 2022, and counsel represents that on September 14, 2022, the defendant filed for a divorce in Plymouth Probate and Family Court. The plaintiff was pregnant with the defendant's child, according to her affidavit and testimony.

Viewing the facts in the light most favorable to the prevailing party, the plaintiff did not respond during this drop off to questions posed by the defendant concerning the details of their divorce, his housing situation, and the marital home, in which the plaintiff was living. The defendant began yelling and swearing at the plaintiff and would not hand over their son. The plaintiff told the defendant that she was going to call the police, which she did. The defendant got out of the car in which he had arrived with the minor child, grabbed the minor child's two bags, put one on the ground, and tossed the other toward the plaintiff.[1] The bag hit the plaintiff, though it did not injure her. The police arrived after the defendant had left.

---

[1] The word "tossed" is used in a police report that was filed after the plaintiff then called the police. The plaintiff's subsequent testimony was somewhat stronger, but we will, for present purposes, utilize the terminology preferred by the defendant, "toss." The difference in language ultimately is immaterial to our decision.

The defendant subsequently sent a text message to the plaintiff stating that he was going to return to stay at the marital home, where he had not lived for the prior six weeks. The plaintiff informed the defendant that she would call the police if he returned to the marital home, asked her own father to spend the night with her in the house for her safety, and bolted her doors shut that night out of fear.

The next morning, the plaintiff filed ex parte for an abuse prevention order under G. L. c. 209A. In her affidavit, she detailed not only the incident from the day before but also other recent behavior which contributed to her fear. The affidavit stated that the defendant's behavior was "progressively worse -- more erratic, confrontational and destructive," and that it included throwing objects and even smashing a vacuum cleaner in the garage.[2] She also said in the affidavit that the defendant is a one hundred percent (100%) disabled Marine Corps veteran suffering from post-traumatic stress disorder (PTSD), and that he has a license to carry and access to firearms. An ex parte order issued, and on October 5, 2022, a two-party extension hearing was held. The defendant was represented by counsel and was present at the hearing.

---

[2] The defendant argues here that the vacuum cleaner was already broken. We may assume, without deciding that is so, because whether or not it was broken prior to his destroying it is immaterial to our decision.

3

The plaintiff testified that the defendant had "been increasingly argumentative, he comes into the house unannounced, confrontational, cryptic, paranoid." She clarified that "confrontational" meant that the defendant was "swearing, yelling . . . [a]t [her], around [her], in front of [their] son," and she testified that the behavior made her nervous. She testified that the defendant had thrown a glass bottle in the garage, not at her but in her direction, and the defendant testified that it smashed on the ground, which he did not clean up. The plaintiff also testified that the defendant had thrown other objects when she was in the house and had destroyed a vacuum cleaner.

She also, significantly, testified regarding a text message she had received from the defendant in September 2022, containing a photograph of a woman in a medical establishment wearing a mask and with a gauze bandage around her arm. When the plaintiff inquired into who the woman was and why the defendant was sending her the picture, the defendant responded, "If you don't know, which you should, ask around."

The plaintiff testified that she was scared following the defendant's throwing the child's bag at her and saying he was coming back to stay at her home. She testified that she was, at the time of the hearing, afraid of the defendant. She stated that the conversation in the parking lot made her feel

4

threatened, and that she took the cryptic text message as a threat.

The defendant, in essence, asks us to hold that on all these facts and circumstances, as a matter of law, the plaintiff could not have been in reasonable fear of imminent physical harm. We decline to do so. The plaintiff described escalating and confrontational interactions between the parties as they went through a messy divorce during a time when she was pregnant with the defendant's child. The extremely troubling text she received, which the judge could properly have interpreted as threatening; the escalation up to and including the confrontation in the parking lot in which the defendant threw or tossed the child's bag at the plaintiff, striking her, albeit not injuriously; and the subsequent threat to return to the marital home following that confrontation, along with all the other facts and circumstances, support the judge's conclusion, which was based in part on credibility judgments that we are not in a position to dispute, see Ginsberg v. Blacker, 67 Mass. App. Ct. 139, 140 n. 3 (2006) ("We accord the credibility determinations of the judge who 'heard the testimony of the parties . . . [and] observed their demeanor,' the utmost deference" [citation omitted]), that the plaintiff was indeed in reasonable fear of imminent serious physical harm.

5

Consequently, the issuance of the G. L. c. 209A order on October 5, 2022, following the two-party hearing, is affirmed.

<u>So ordered</u>.

By the Court (Rubin, Singh & Hershfang, JJ.[3]),

Assistant Clerk

Entered:  March 8, 2024.

---

[3] The panelists are listed in order of seniority.