SUPREME JUDICIAL COURT 
 
 COMMONWEALTH vs. SKIPPER CARINO

 
 Docket:
 SJC-13737
 
 
 Dates:
 September 5, 2025 - December 9, 2025
 
 
 Present:
 Budd, C.J., Gaziano, Kafker, Wendlandt, Georges, Dewar, & Wolohojian, JJ.
 
 
 County:
 Middlesex
 

 
 Keywords:
 Abuse Prevention. Protective Order. Evidence, Photograph. Practice, Criminal, Motion for a required finding.
 
 

             Complaint received and sworn to in the Cambridge Division of the District Court Department on July 25, 2022.
            The case was tried before David E. Frank, J.
            After review by the Appeals Court, 104 Mass. App. Ct. 578 (2024), the Supreme Judicial Court granted leave to obtain further appellate review.
            Rachel Chunnha for the defendant.
            Dylan T. Punch, Assistant District Attorney (Madison Bush, Assistant District Attorney, also present) for the Commonwealth.
            DEWAR, J.  A jury convicted the defendant, Skipper Carino, of violating an abuse prevention order.  The order was issued under G. L. c. 209A upon application of a plaintiff to whom we refer as the victim in this ensuing criminal case.  The abuse prevention order required, among other provisions, that the defendant "stay away" from the victim's residence; the order did not, however, specify that he keep any particular distance away.  At trial, the defendant was not alleged to have entered the property.  Rather, the Commonwealth sought to prove that the defendant violated the stay away provision by "position[ing] himself sufficiently proximate to [the property] that he would be able to abuse or to contact the plaintiff, in the event that the plaintiff were on the property, or entering or leaving it."  Commonwealth v. Watson, 94 Mass. App. Ct. 244, 249 (2018).  On appeal, the defendant challenges the sufficiency of the Commonwealth's evidence of such a violation. 
            The evidence showed that the defendant intended to violate the abuse prevention order, approached the victim's residence by walking along a street parallel to the victim's street on the other side of the victim's block, and, at the time he was arrested, had reached the house on the parallel street that was directly behind the victim's house.  The defendant thus certainly reached the vicinity of the victim's property.  For reasons that follow, however, even viewing the evidence presented at trial in the light most favorable to the Commonwealth, a rational trier of fact could not conclude beyond a reasonable doubt that, at the time police arrested the defendant, he had "positioned himself sufficiently proximate to [the property] that he would be able to abuse or to contact the plaintiff, in the event that the plaintiff were on the property, or entering or leaving it."  Watson, 94 Mass. App. Ct. at 249.  We accordingly reverse the defendant's conviction.  
            Background.  1.  Facts.  We recite the facts the jury could have found, viewing the evidence in the light most favorable to the Commonwealth.  We reserve certain details for later discussion.
            In March 2022, the victim obtained an abuse prevention order against the defendant under G. L. c. 209A, § 3 (209A order).  Of most significance here, one provision of the order required the defendant to "leave and stay away from" the victim's residence (stay away provision), but did not specify a minimum distance.  The victim lived in a multiunit building, and the order further provided that the defendant was to stay away from the entire building.[1]  The order also prohibited the defendant from abusing the victim, contacting her or the two children in her custody, or coming within one hundred yards of her or the children.  Initially set to expire after two weeks, the order subsequently was extended until March 2023.  Both the initial 209A order and the extended order were served on the defendant.               
            The victim's residence was located partway down the block on a street of houses.  Other houses stood immediately on either side of hers.  Another street ran parallel to the victim's street, forming the opposite side of the block on which the victim's residence was located.  As shown in an aerial photograph of the block, at the center of the block were backyards of the various houses along its perimeter; this backyard area included, among other things, a number of trees.  On the street parallel to the victim's street was a house, standing alongside others, that we shall call the rear house; it was located directly behind the victim's residence, on the opposite side of the block, separated by the backyard area.  The rear house had a driveway on one side, perpendicular to the parallel street, with a shed at its end.  
            On July 23, 2022, police observed the defendant driving in the direction of the victim's neighborhood.  The defendant parked at a nearby field and then walked in the direction of the victim's residence, eventually walking on the sidewalk of the parallel street.  The defendant told police in a recorded statement that he intended to drop off money he owed to the victim; that he walked on the parallel street because he was aiming to observe whether the children were playing in the backyard of the victim's residence; and that, if the children were there, he would conclude that the victim was at home and would depart.  The jury were not required to credit these assertions; however, they could reasonably infer from the defendant's statement and other evidence that the defendant was familiar with the victim's residence and sought to observe the residence from behind before approaching it.  
            Eventually, still walking on the sidewalk of the parallel street, the defendant reached the entrance to the driveway alongside the rear house.  At that point, police officers arrested him, believing that he had already violated the 209A order by coming within one hundred yards of the victim's property.  At the time of his arrest, the defendant was standing roughly directly behind the victim's residence, approximately 200 feet away, on the opposite side of the block.
            2.  Procedural history.  The defendant was charged with one count of violating an abuse prevention order under G. L. c. 209A, § 7.  
            At trial, the defendant argued that the Commonwealth failed to prove beyond a reasonable doubt its theory that he violated the 209A order by positioning himself in a location where he could abuse or contact the victim in the event that she were on the property or entering or leaving it.  On cross-examination of a police witness during the Commonwealth's case, the defendant introduced in evidence an eye-level photograph taken from a location near where the defendant was arrested.  This photograph, which we will call the rear driveway photograph, depicts a view looking down the driveway alongside the rear house, toward the shed at the end of the driveway and the center of the block beyond, in the direction of the back of the houses on the victim's street.
            The judge denied the defendant's motions for required findings of not guilty at the close of the Commonwealth's case and after the defense rested without presenting any further evidence.  The jury returned a guilty verdict, and the defendant was sentenced to one year in a house of correction.  He filed a renewed motion for a required finding of not guilty, which was denied.  The Appeals Court affirmed the defendant's conviction, Commonwealth v. Carino, 104 Mass. App. Ct. 578, 586 (2024), and we allowed his application for further appellate review.
            Discussion.  Chapter 209A, the Abuse Prevention Act, was enacted to provide "a statutory mechanism by which victims of family or household abuse can enlist the aid of the State to prevent further abuse."  MacDonald v. Caruso, 467 Mass. 382, 385 (2014), quoting Commonwealth v. Gordon, 407 Mass. 340, 344 (1990).  An abuse prevention order issued under the statute may require, among other things, that the defendant vacate and remain away from the plaintiff's household or workplace.  See G. L. c. 209A, § 3; Commonwealth v. Dufresne, 489 Mass. 195, 198 (2022).  Although an abuse prevention order itself is civil in nature, see G. L. c. 209A, § 3A, violation of such an order is a criminal offense under G. L. c. 209A, § 7.  Dufresne, supra at 199-200.  
            To obtain a conviction of violating an abuse prevention order, the Commonwealth must prove beyond a reasonable doubt that "(1) a valid [abuse prevention] order was entered by a judge and was in effect on the date of the alleged violation; (2) the defendant violated the order; and (3) the defendant had knowledge of the order."  Dufresne, 489 Mass. at 200, quoting Commonwealth v. Kulesa, 455 Mass. 447, 452 (2009).  A defendant need only possess knowledge of the order, not intent to violate it, to be found guilty.  Commonwealth v. Delaney, 425 Mass. 587, 596-597 (1997), cert. denied, 522 U.S. 1058 (1998).  Here, the defendant disputes only the sufficiency of the Commonwealth's proof that he had violated the 209A order at the time he was arrested.
            When reviewing for sufficiency of the evidence, we consider whether, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt" (citation omitted).  Commonwealth v. Latimore, 378 Mass. 671, 677 (1979).  "[C]ircumstantial evidence is sufficient to establish guilt beyond a reasonable doubt, and inferences drawn from such evidence need only be reasonable and possible; [they] need not be necessary or inescapable" (quotations and citations omitted).  Commonwealth v. Gonzalez, 475 Mass. 396, 407 (2016).  However, "it is not enough for the appellate court to find that there was some record evidence, however slight, to support each essential element of the offense; it must find that there was enough evidence that could have satisfied a rational trier of fact of each such element beyond a reasonable doubt."  Id., quoting Latimore, supra at 677–678.  Furthermore, "[n]o[] . . . conviction [may] rest upon the piling of inference upon inference or conjecture and speculation."  Gonzalez, supra, quoting Commonwealth v. Swafford, 441 Mass. 329, 343 (2004).  
            The Commonwealth at trial did not contend that the defendant violated the 209A order to stay away from the victim's residence by either entering the protected property or taking another action that directly intruded on it.  Cf. Watson, 94 Mass. App. Ct. at 248.  Rather, the Commonwealth sought to prove that the defendant violated the order by "position[ing] himself sufficiently proximate to [the property] that he would be able to abuse or to contact the plaintiff, in the event that the plaintiff were on the property, or entering or leaving it."  Id. at 249.  The judge instructed the jury on this theory.  The judge also instructed the jury that they could not "convict the defendant based solely on a finding that he was in the vicinity of the protected residence."  Commonwealth v. Goldman, 94 Mass. App. Ct. 222, 226 (2018).
            Viewing the evidence in the light most favorable to the Commonwealth, a rational juror could find from the evidence the following.  Based on the defendant's statement describing his plan to walk along the parallel street in order to ascertain whether the victim appeared to be at home and whether the children were playing in the backyard, the defendant inferably was familiar with the victim's property and believed that walking along the parallel street on the opposite side of the block would offer him a vantage point from which to observe it.  The jury also could infer that at least a portion of the victim's residence would have been visible from somewhere along the parallel street based on evidence including not only the defendant's statement, but also the aerial photograph of the block; the aerial photograph shows that only a backyard area with a smattering of trees and a shed stood between the victim's residence and the houses on the parallel street.  And, at the time of his arrest, the defendant had reached the portion of the parallel street that was closest to the victim's residence, roughly directly behind the victim's residence.  At this location, the defendant was approximately 200 feet away from the victim's residence and a lesser distance from the edge of her backyard somewhere in the center of the block.[2]  
            The defendant thus plainly reached the general vicinity of the victim's residence.  The close question in this appeal is whether, as the Commonwealth contends, a rational jury could conclude that the evidence proved beyond a reasonable doubt that, by the time of the defendant's arrest in the course of executing his plan, he had "positioned himself sufficiently proximate to [the property] that he would be able to abuse or to contact the [victim], in the event that [she] were on the property, or entering or leaving it."  Watson, 94 Mass. App. Ct. at 249.[3]  
            There was no testimony at trial regarding how the defendant would have been able to contact or abuse the victim if she were on her property or entering or leaving it.  No witness testified regarding whether it was possible to observe any portion of the victim's property, or the victim if she were entering or leaving the property, from the location where the defendant was arrested or from any other location along his walk on the parallel street prior to his arrest.  Cf. Watson, 94 Mass. App. Ct. at 246 (defendant positioned himself on sidewalk outside victim's building, separated from building by knee-high fence, approximately twenty to twenty-five feet from building's front door).  Nor was there evidence of conduct by the defendant -- such as peering toward the victim's residence -- from which the jury could infer that he reached such a vantage point.  Cf. Commonwealth v. Telcinord, 94 Mass. App. Ct. 232, 233, 241 (2018) (after driving behind victim's vehicle, defendant parked his vehicle on street "near and in clear sight of" victim's residence).  
            The Commonwealth's argument that it nonetheless introduced sufficient evidence on this element chiefly rests on the two photographs in evidence, the aerial photograph of the victim's block and the rear driveway photograph taken from approximately the location where the defendant was arrested.  And, for the first time on appeal, the Commonwealth asserts that the rear driveway photograph "clearly shows a line of sight from the top of the driveway belonging to [the rear house] to the back of the [victim's] home, including windows."  
            The photographs cannot bear the weight the Commonwealth places on them.  First, contrary to the Commonwealth's assertion for the first time on appeal, the rear driveway photograph does not show the victim's residence.  The photograph's view is toward the center of the victim's block, from the general area where the defendant was arrested on the parallel street.  The photograph shows the full length of the driveway beside the rear house, with the shed at the driveway's end and trees beyond; the rear house is on the right side of the driveway and another house stands on the left.  Past the end of the driveway, to the left of the shed, through the trees, it is possible to see dark outlines of part of the roof and a window of one house located on the opposite side of the block.  There was no testimony at trial that this house was the victim's residence or indeed any mention of these dark outlines of part of one house on the victim's street.  And an inference by the jury that the photograph depicted the victim's residence would not have been reasonable or would impermissibly have rested on speculation.  See Gonzalez, 475 Mass. at 407.  Based on the angle of the photograph[4] as well as the location of the house in the distance to the left of the shed, the house in the distance is located diagonally to the left of the rear house and not directly behind it.  Yet all the evidence at trial regarding the location of the victim's residence -- including the labeled aerial photograph and police testimony -- was that her residence was the house located directly behind the rear house, rather than one of the houses located diagonally across the block.  Thus, while the rear driveway photograph does not capture the sole view the defendant would have had during his walk, it does not show a line of sight to the victim's property -- which appears to be blocked in the photograph by the shed as well as trees -- and accordingly does not, without more, prove that the defendant reached a vantage point from which he could observe the victim's property.  
            Nor does the aerial photograph supply sufficient proof.  To be sure, the photograph does illustrate that the defendant was in the vicinity of the victim's property, on the other side of the block, and depicts only limited visual obstructions between the parallel street and the victim's residence, including the shed and some trees.  But the aerial photograph itself does not prove that, despite these visual obstructions, the defendant actually ever reached a vantage point from which he could observe the victim on her property or entering or leaving it.  And we reject the Commonwealth's passing suggestion for the first time on appeal that, based on this photograph together with the testimony that the defendant was approximately 200 feet from the victim's residence, the jury reasonably could have inferred that, regardless of whether the defendant could see the victim's property, he nonetheless would have been able to contact her "by yelling at her or simply trying to make himself seen" from the location where he was arrested.  There was no evidence presented at trial about the feasibility of the defendant contacting the victim in either of these ways from this distance across the block if she were on, entering, or leaving the property.  In the absence of any such evidence, the inference now urged by the Commonwealth would have rested on impermissible speculation.  See Gonzalez, 475 Mass. at 407.   
            Finally, we cannot uphold the defendant's conviction of violating the 209A order based on the evidence that he not only was in the vicinity of the victim's residence but also was moving toward it while intending to violate the order.  Cf. Carino, 104 Mass. App. Ct. at 582-583 & n.9.  A stay away order "creates a haven for the abused party in which no further abuse need be feared and provides a temporary, partial separation of the abused and abusive party, thereby leaving fewer opportunities for abusive contact."  Gordon, 407 Mass. at 347.  The zone of separation created by an order to stay away from a particular address does not shrink or expand based on whether the defendant intends to violate the order.  Cf. Delaney, 425 Mass. at 596-597 (intent to violate order is not element of offense).  Accordingly, evidence that the defendant reached the vicinity of the protected property with the intent to violate the 209A order does not alone suffice to prove that he actually breached the protected physical zone "tethered to the property boundary, and to places proximate to it," defined by sufficient proximity to the property "that he would be able to abuse or to contact the plaintiff, in the event that the plaintiff were on the property, or entering or leaving it."  Watson, 94 Mass. App. Ct. at 249-250.   
            We thus conclude that the evidence presented at the defendant's trial was insufficient to prove beyond a reasonable doubt that, at the time he was arrested on the opposite side of the block from the victim's residence, the defendant had violated the stay away provision of the 209A order.
            Conclusion.  Because the evidence at trial was insufficient to prove that the defendant committed a violation under G. L. c. 209A, § 7, we set aside the verdict, reverse the defendant's conviction, and remand for entry of judgment in favor of the defendant.  
So ordered.
 
footnotes

 
            [1] For simplicity's sake, we refer to the entire building as the victim's residence.  We also refer to the property on which the victim's residence was located as the victim's property, although there was no evidence regarding who owned it.  
            [2] Thus, if the victim had been at her residence, the defendant would have been in violation of the provision of the 209A order requiring him to stay one hundred yards away from her person.  The Commonwealth did not seek to prove that the defendant violated this provision, however; there was no evidence presented at trial that the victim was at home at the time of the defendant's conduct.
            [3] The defendant likely could contact the victim in some way -- such as by a cellular telephone call -- from any location, and a telephone call would violate the no contact provision of the 209A order.  See Commonwealth v. Kendrick, 446 Mass. 72, 75-76 (2006) ("Massachusetts appellate courts have interpreted the term 'no contact' in the [context of c. 209A] to foreclose a myriad of potential encounters, engagements, or communications between people").  But the parties assume, as do we, that, for purposes of proving that the defendant violated the stay away provision of the order by "position[ing] himself sufficiently proximate to [the property] that he would be able to abuse or to contact the plaintiff, in the event that the plaintiff were on the property, or entering or leaving it," Watson, 94 Mass. App. Ct. at 249, the Commonwealth must prove that the defendant could contact the victim in a manner requiring physical proximity to the protected residence.  See id. at 250 (this standard is "tethered to the property boundary, and to places proximate to it[,] . . . thus fulfil[ling] the purpose of the statute, while still providing a defendant fair notice of what conduct would violate the order").  
            [4] The photograph was taken from a location closer to the rear house on the right side of the driveway than to the house on the left side, and it does not depict a view pointing squarely down the driveway toward the opposite side of the block.  Instead, it depicts a view pointing slightly diagonally across the driveway, from right to left.  Consequently, the photograph depicts somewhat more of the side of the house to the left of the driveway, and the area behind it, than of the side of the rear house and area behind it.